## SPRING VALLEY WATER WORKS v. SAN FRANCISCO et al.

An act for the incorporation of water companies, approved April 22d, 1858, provided that the mode of proceeding for the appropriation of lands should be the same as that prescribed in Secs. 27–29 of the Act of April 23d, 1853, for the incorporation of railroad companies. In 1861, an entirely new act for the incorporation of railroad companies was passed, not following the order or number of sections of the Act of 1853, which it entirely repealed, and containing new provisions as to their appropriation of lands. In a proceeding to condemn lands, instituted in 1862 by the plaintiff, a water company incorporated under the Act of 1858 : held, that the course of procedure prescribed by Secs. 27–29 of the Railroad Act of 1853 should be followed, and not those of the new Act of 1861—that those sections were substantially incorporated in the Water Company Act of 1858, and remained a part of the latter, notwithstanding the repeal of the original act.

The existence of a corporation formed under the general State law is proved by its articles of incorporation executed and filed in accordance with the statute.

In incorporating under the general law a strict compliance with all the requirements of the statutes is not essential, and the proceedings will not be held invalid for slight defects or omissions.

The omission or irregular performance of acts relating to the organization of a corporation, can only be investigated in a direct proceeding instituted by the State for that purpose, and not in a collateral action. So, too, of those acts which are not made prerequisites to the exercise of corporate powers but which operate as a forfeiture.

Where an act authorized the incorporation of a water company, and also provided that 3,000 feet of water pipe should be laid down within one year : held, that the laying of the pipe within the period mentioned was not a condition of the existence of the corporation, nor was proof of it necessary to enable the corporation to maintain an action or proceeding after the expiration of the year.

The rule that in order to complete the creation of a corporation the charter must be accepted by those incorporating, has no application to corporations formed under general laws.

Where a law is passed for the special benefit of a party, his acceptance of it will be presumed.

Where a franchise was granted to an individual, and his associates, and assigns, and the same act contained a provision requiring the individuals to incorporate themselves within a given time : held, that there was no need of any assignment from the individuals to the corporation—that the franchise by operation of law vested in the corporation as soon as it was formed.

In a proceeding to appropriate lands under the railroad law, the commissioners are not required to determine questions of title, nor to report the amount of compensation to which each of several claimants of the same tract is entitled. It is proper for them to report a gross sum as compensation for the tract, leaving the County Judge to distribute it among the several owners.

The view of the premises required to be made by the commissioners in condemning
lands under the Water Company Act of 1858, may be made by them at any
time before submitting their estimate and report. It is proper that the view
should be had before hearing the evidence.

APPEAL from an order of the County Judge of San Francisco
in a proceeding to condemn lands.

The facts are stated in the opinion of the Court.

*John Wilson, P. G. Buchan,* and *M. N. Saunders,* for Appellants.

The act authorizing water companies to apply to the County
Judge for the appropriation of lands, was passed at the same session
(1861) as the law amending the Railroad Act, as to the mode of
acquiring land.  The mode prescribed by the new act is more consistent with equity and the rights of parties.  The Supreme Court
having decided that this mode of taking a citizen's property by a
corporation without the intervention of a jury was constitutional,
the Legislature adopted a mode by which the rights of the owners
of property should not be entirely left to the discretion of a County
Judge, who could appoint five commissioners, without the right of
challenge, and other rights, which are preserved to the citizen on a
trial by jury.  By the amended Railroad Act of 1861, three commissioners are to be appointed; one to be nominated by the owners
of the property, one by the corporation, and one by the County
Judge.  This forms some check on the County Judge, and tends
to preserve the rights of all parties.

It is true that the act under which this proceeding is had was in
point of time passed shortly before the amendments to the Railroad
Act, but they were both passed at the same session.

Statutes enacted at the same session are to be construed together.
(2 Monroe, Ky., 77 ; 2 Blackford, Ind., 249.)

It is an established rule in the construction of statutes that are
in *pari materia,* that they are to be taken together in construing
the law in relation to them.  (6 Bacon's Abridg. 382.)

If a thing in a subsequent act be within the reason of a former
act, it shall be taken to be within the meaning of that statute.  (3
How. 556 ; 12 N. H. 284.)

The amendments of the Railroad Act in reference to the mode of taking land, we contend, operated as an amendment of the act in reference to water companies taking land, prescribing a new mode of appointing commissioners to appraise the land and assess the damages.

II.   The County Judge erred in overruling the objections to the evidence of incorporation of the petitioners, and that they had not shown that they had performed the conditions of the laws under which they claimed to be incorporated, particularly the first section of the Act of 1858, under which act they claimed to be incorporated, nor shown an acceptance of the Act of 1859.

The Act of 1858 (Stat. p. 254), referred to in the petition, conferred on George H. Ensign and his associates, certain powers and rights to lay down water pipes, provided 3,000 feet were laid down in one year from the passage of the Act of 1858 (see Sec. 1st), and provided they incorporated themselves within sixty days from the passage of the act.   (See Sec. 8th of the Act.)

They did incorporate themselves on the nineteenth of June, 1858.   (See Certificate in Transcript.)

On the eleventh of April, 1859, and before the year expired, the Legislature passed another act, amending the act of 1858, giving George H. Ensign (not the incorporation) two years, instead of one, to lay down 3,000 feet of pipe.   The incorporation already created is not mentioned in the Act of 1859.   The Act of 1859 added another section, declaring this act should not in any manner interfere with the grants made to other water companies.   So far this is an abridgment of the former law, for it contains no such provision.

There is no proof in the record, either offered or given, that the corporation accepted this latter act.   It may be that this restriction seriously affects them, and therefore it must be accepted by a majority of the corporators—not the trustees.   Trustees are only to administer the law as it existed when they were appointed.

There is no assignment by George H. Ensign of his franchise under the law of 1859 to the corporation.   There is no assent by any body shown of its reception, and most surely there is none pretended by the stockholders.   That there must be such an accept-

Spring Valley Water Works *v.* San Francisco.

ance shown. (See Angel & Ames on Corporations, 53; 13 Penn. 133, case of *Claghorn* v. *Cullen.*)

The evidence shows they did not put down the 3,000 feet of pipe till a few days before the two years elapsed. (See 1 Greenl. 80.) Corporations must prove their acceptance of a new law, as much as an old one (17 Maine, 442); must show their acceptance of their new charter, or a new law, and their books are the best evidence of this.

III. The commissioners erred in not allowing the parties to establish their respective interests and title in the land sought to be condemned before fixing the amount of damages to be awarded, and the County Judge erred in sustaining on motion for a new hearing the decision of the commissioners.

The old Railroad Act (Sec. 28th) under which this proceeding is had, specifies the mode in which the damages are to be assessed. The petition is to set forth the names of the owners, claimants, tenant, lessee, or incumbrancer, as far as known. This they do, setting forth some as owners and some claiming as lessees. (See petition.) The County Judge is to appoint commissioners to ascertain " the compensation to be made to such owners and persons interested for the taking or injuriously affecting such lands," etc. The commissioners are to ascertain " the compensation proper to be made to said owners and parties interested, or injuriously affected. The Court upon proof that the damages have been paid to the parties entitled to the same, shall enter a rule," etc. It was utterly impossible for the commissioners to ascertain the parties' damages without knowing their respective interests. The damages to a lessee would be entirely different from the damages to an owner.

The jurisdiction of the County Judge is limited and special. When the commissioners make their report, the County Judge either confirms it, or grants a new hearing. There his jurisdiction ends.

IV. The commissioners erred in not viewing the premises after hearing the testimony, as required by Sec. 28 of the Railroad Act, under which they proceeded.

*Eugene Liés,* for Respondent.

CROCKER, J. delivered the opinion of the Court—COPE, C. J. and NORTON, J. concurring.

The plaintiffs are a corporation organized for the purpose of introducing pure fresh water into the City of San Francisco, and they instituted this special proceeding for the purpose of condemning a certain tract of land to the uses of the company, before the County Judge of the City and County of San Francisco. The parties interested in the property appeared, and on the twelfth day of August, 1862, the County Judge appointed commissioners to report the compensation to which the owners were entitled. The commissioners reported that the owners were entitled to the sum of seven hundred and fifty dollars, which was paid to the County Clerk, and the County Judge rendered a decree adjudicating the premises to the plaintiffs. The defendants moved to set aside the report, and for a new trial, which was denied, and thereupon they appealed to this Court.

The plaintiffs were organized under and in pursuance of an Act entitled "An Act for the Incorporation of Water Companies," approved April 22d, 1858 (Stat. 1858, 218), by Sec. 2 of which it is provided that the mode of proceeding for the appropriation of lands shall be the same as prescribed in Secs. 27–29 of the Act providing for the incorporation of Railroad Companies, passed April 22d, 1853, except that such proceedings shall be had before the County Judge of the county where the lands are situated. In 1861 (Stat. 1861, 228), this Sec. 2 was amended, by providing that, where the County Judge was interested, the proceedings should be before the District Judge. Afterwards, on the twentieth day of May, 1861, an entirely new act was passed for the incorporation of railroad companies, not following the order or number of the sections of the Act of 1853, but changing them throughout, and also repealing the Act of 1853.

The plaintiffs in these proceedings followed the provisions of Secs. 27–29 of the Act of 1853, instead of the revised Act of 1861, and this, it is insisted, was erroneous, and it is claimed that the latter act should have controlled the proceedings. If the new railroad law of 1861 had been merely amendatory of the Act of 1853, preserving the sections with their numbers, there would have

been some force in the position taken by the defendants. But when we come to examine the revised law of 1861, we find the sections entirely changed, and the subject matter of these three sections of the Act of 1853 is now found in Secs. 17, and 24 to 39 inclusive, in the Act of 1861. If the plaintiffs' proceeding is to be governed by Secs. 27–29 of the Act of 1861, they will be found entirely insufficient, without the use of other sections, to regulate the action of the officers having jurisdiction of the matter. We do not see how the Act of 1858 can be extended or construed to include these additional sections, or indeed be held to apply in any way to a law not then enacted. The Act of 1858 substantially incorporated these three sections of the Railroad Law of 1853 within its provisions, and the repealing clause of the Act of 1861 repealed the Act of 1853 so far as it applied to railroad companies, but substantially left these three sections in force, so far as they were made part of the law relating to water companies. We see no other mode of carrying out the evident intention of the Legislature. It would seem that if it had been their intention that water companies should be governed by the provisions of the new railroad law, they would have so expressed it, especially as at the same session they amended the section relating to this subject in the water companies' act. We hold, therefore, that the proceedings were properly conducted in accordance with the provisions of these three sections of the Act of 1853.

At the hearing before the County Judge of the application for the appointment of commissioners, the plaintiffs offered in evidence a certified copy of the certificate of incorporation, to which the defendants objected: 1st, that the certificate is not in accordance with the law of April 23d, 1858; 2d, that it varies from the complaint; and 3d, because the Act of April 23d, 1858, could not authorize them to incorporate themselves. The Act of April 23d, 1858, referred to (Stat. 1858, 254), authorizes George H. Ensign and his associates and their assigns, to lay down iron water pipes in the City of San Francisco, for the purpose of furnishing fresh water to the inhabitants, and provides that 3,000 feet be laid down within one year from its passage and water furnished therefrom, and that it should not take effect unless the parties named in Sec. 1

should within sixty days duly organize themselves in conformity with the laws regulating corporations. The articles of association of the corporation were filed June 19th, within the sixty days, signed by George H. Ensign, Henry Baker, and Edward Jones, and they refer to this Act of April 23d, 1858, and also to the Act of April 22d, 1858, authorizing the incorporation of water companies, as the laws under which they incorporate. In 1859 (Stat. 1859, 209) the Legislature passed an act amending Sec. 1 of the Act of April 23d, 1858, thereby extending the time two years for laying down the 3,000 feet of pipe.

It is insisted that the laying down of three thousand feet of pipe in one year was a condition, the non-performance of which forfeited the rights conferred by the act and vitiated the acts of incorporation, and that it was, therefore, necessary for the plaintiffs in this proceeding to prove a performance of that condition. The existence of a corporation formed under the general corporation laws of this State is proved by its articles of association or incorporation, executed and filed in accordance with the statute. A strict literal compliance with all the requirements of the statute is not essential, and the proceedings will not be held invalid for slight defects or omissions. Thus it has been held, that an omission of the names and number of the trustees who are to manage the concerns of the company the first year is not a fatal defect (*Mead* v. *Keeler*, 24 Barb., S. C., 20.) So of a failure to file a duplicate of the articles of association with the Secretary of State (*Cross* v. *Pinckneyville Man. Co.*, 17 Illinois, 54 ; *Mokelumne Hill M. Co.* v. *Woodbury*, 14 Cal. 427) ; or where, in the articles of association of a railroad company, the length of the line of the road was incorrectly stated (*Troy and Rutland Railroad Co.* v. *Kerr*, 17 Barb. S. C. 581) ; or a failure to pay the ten per cent. of the capital stock subscribed at the organization (*Eaton* v. *Aspinwall*, 10 N. Y 119 ; *Abbott* v. *Aspinwall*, 26 Barb. S. C. 202) ; or a failure on the part of the commissioners appointed to receive subscriptions to the stock to follow the requirements of the law (*McFarland* v. *Triton Ins. Co.*, 4 Denio, 392 ; *Judah* v. *American L. S. Ins. Co.*, 4 Ind. 334) ; or stating the name of a city as " the place fo business " instead of " the *principal* place of business," as required

by the law (17 Cal. 132). It is also held that a liberal construction is to be adopted with regard to the acts required to create a corporation, and every presumption is to be indulged in favor of its legal existence after it has gone into operation. (*Judah* v. *American L. S. Ins. Co.*, 4 Ind. 334; *Dunning* v. *New Albany and Salem R. R. Co.*, 2 Id. 437; 17 Ill. 54; Ang. & Ames on Corp. 573.) And when a corporation has gone into operation, acting under a charter granted upon a condition precedent, it will be presumed that the condition has been performed. (Ang. & Ames on Corp. 59.) It has also been held that the irregular or non-performance of acts relating to the organization of the corporation can only be investigated in a direct proceeding instituted by the State for that purpose, and not in a collateral action. (*McFarlan* v. *Triton Ins. Co.*, 4 Denio, 392; *Eaton* v. *Aspinwall*, 19 N. Y. 119; *Caryl* v. *McElrath*, 3 Sanford, S. C., 176.) So, too, of those acts which are not made prerequisites of. the exercise of corporate powers, but which operate as a forfeiture of the corporate franchise. (*Mokelumne Hill Mining Co.* v. *Woodbury*, 14 Cal. 424; *People* v. *Manhatten Co.*, 9 Wend. 351.) This last case is directly in point upon the question raised by the defendants. The act incorporating the Manhatten Company required that they should within ten years from the passage of the act furnish a supply of pure, wholesome water sufficient for all the citizens of New York agreeing to take water upon the terms of the company, and this time was, by a subsequent act, extended ten years: *held*, that this was a *defeasance*, and not a *condition precedent*, to the exercise of corporate powers, and that, even after the time had expired, they were not bound to prove a performance of the condition to show a present right. The objection of the defendants that the plaintiffs did not prove a performance of this condition does not affect the rights of the plaintiffs in these proceedings.

As already stated, an act was passed in 1859 amending Sec. 1 of the Act of 1858, so as to extend the time for the performance of this condition, and it is objected that there was no proof that the plaintiffs ever *accepted* this amendatory act. Where a corporation is created by a special charter or act of incorporation it has been held that in order to complete the creation the charter must be

29

*accepted* by the persons incorporated. (Ang. & Ames on Corp. Secs. 81, 82.) But this rule of law has no application whatever to corporations formed under general laws like those of this State, where the corporators are the acting party in creating the corporation. In the present case a law is passed for the special benefit of the plaintiffs, and in such case the presumption is that they ask for its passage, or that they have accepted it, and no express acceptance is required to be shown. (Ang. & Ames on Corp. Sec. 83.)

It is also objected, that there is no proof of any assignment from Ensign and his associates to the plaintiffs of the franchise or privileges granted by the Act of 1858 and the amendatory Act of 1859 to the former. No such assignment is necessary. The grant was to Ensign and his associates, and one of its express conditions was that they were to incorporate themselves, and when they did so the franchise immediately vested, by operation of law, in the corporation. The extension of time granted by the Act of 1859 was for the benefit of the corporation, and no assignment under it was necessary. The Act of 1859 in no sense affected the organization of the corporation.

It is also urged that the commissioners erred in not allowing the parties to prove the respective claims set up by them to the land. Sec. 28 of the Railroad Law of 1853 provides, that companies desiring to procure any lands shall file a petition praying the appointment of commissioners to " ascertain the compensation to be made to the owners and persons interested." " The commissioners having heard the proofs and allegations of the parties, three or more of said commissioners shall, after viewing the premises, without fear, favor, or partiality, ascertain and certify the compensation proper to be made to the said owners and parties interested for the land, real estate, and property so to be taken or injuriously affected." In proceedings of this character, to condem land for railroad purposes, it is usual to include in one petition several tracts on the line of the road, each tract having its owner or owners, and often there are several adverse and conflicting claimants of the same tract. The duties of the commissioners are plain and simple. They are merely to ascertain and report the compensation to which

the owners of each particular tract of land are entitled; and for the purpose of ascertaining the amount of such compensation, they are required to hear the proofs and allegations of the parties, and to personally view the premises. The market value of the land taken is the main ingredient of this estimate, though now, by the Act of 1861, they are required to make allowance for any benefit or advantage that in their opinion will accrue to the owners by reason of the construction of the railroad; but that is not an element of the estimate in this case. The commissioners are selected, not for their supposed judicial abilities, but for their good judgment in estimating the value of property, and their disinterestedness. It is no part of their duties to hear evidence and determine the right, title, and interest of each claimant of the several tracts of land, whether such claims are conflicting or not. The Court or Judge before whom the proceedings are conducted, and not the commissioners, is the proper tribunal to determine such questions. After the report of the commissioners is made and filed, and the money paid into the hands of the County Clerk, the Court or Judge can, on motion, distribute the same among the several owners and claimants, according to the extent of their several interests; and, if there are adverse or conflicting claims, can determine them, and award the compensation to the person really entitled. When there are no questions as to who are the real owners of the tract, and there are several persons having divided or undivided interests therein, it is proper for them to set forth such interests in their answer to the petition, and ask that the same may be separately estimated, and there would be no impropriety in the Court or Judge directing the commissioners to make such separate estimate and their reporting accordingly. This is a matter depending, however, upon the sound discretion of the Court or Judge. There is nothing in the statute which requires the commissioners to determine these questions of title, or which requires them to report the amount of compensation each of the claimants of the same tract is entitled to. In this case the commissioners refused to hear evidence upon questions of title and ownership, and reported a gross sum as the proper compensation for the tract, and in this there was no error. The County Judge is competent to distribute this sum among the several owners

according to the extent of their interests, and can, if necessary, hear evidence upon those questions.

The commissioners viewed the premises *before* hearing the evidence and declined to view them *after* the testimony was closed, and this refusal is also alleged as error. The statute requires that they shall, after viewing the premises, ascertain and certify the compensation proper to be made. Under the statute they can make this view at any time before making their estimate and report. Whether this is done before or after hearing the evidence, depends upon their own discretion. There is a manifest propriety in making this inspection before hearing the evidence, as thereby they will be the better able to understand and apply the testimony.

Judgment affirmed.