[L. A. No. 503.   Department One.—October 25, 1899.]

ADOLPH RAMISH et al., Respondents, v. WILLIAM A. HARTWELL, City Treasurer, and WILLIAM HAYES, Intervenor, Appellants.

STREET BOND ACT—SALE OF LAND AT AUCTION—REFERENCE TO POLITICAL CODE—AMENDMENT FOR SALE TO STATE.—Under the act of February 27, 1893, providing for the issuance of serial bonds to represent the cost of street improvements exceeding one dollar per front foot, the provision in section 5 for the sale of land to satisfy a bond issued to represent the assessment thereupon, in case of default, "by proceedings in all respects the same as are provided by law for the collection of delinquent state and county taxes," refers only to the proceedings then provided by law for the sale at auction of the least quantity of the land which would pay the taxes and costs, subject to redemption within one year, and does not include the amendment of 1895 for a sale of land to the state by operation of law, and declaration of the tax collector.

ID.—STATUTORY CONSTRUCTION—ADOPTION OF PROVISIONS OF ANOTHER STATUTE—SUBSEQUENT MODIFICATION.—As a general rule, the adoption in one statute, for the purpose of carrying its provisions into effect, of the provisions of another statute by reference thereto, has the same effect as if the provisions of the other statute then in force were incorporated bodily in the later enactment. It does not include subsequent amendments or modifications of the statute referred to, unless a clear intent to do so is expressed, or is manifest from the adoption into a special act of the provisions of general laws; but in no case will any amendment or modification or repeal of the statute referred to be construed to subvert the purpose or effective operation of the adopting statute, unless there is a clear necessity for such construction.

ID.—CONCLUSIVENESS OF BOND—CONSTITUTIONAL LAW.—The provisions of the bond act, in so far as making the issuance of the bond conclusive evidence of the validity of the lien, are without the power of the legislature and unavailing; but, in so far as making its issuance conclusive evidence of the regularity of proceedings not essential to the jurisdiction of the officers to create the assessment, they are constitutional and valid.

ID.—DUE PROCESS OF LAW—RIGHTS OF APPELLANT.—An appellant has no interest to assert that a statute is unconstitutional merely because it might be so construed as to violate the constitution; but his right is limited to the inquiry whether the statute as applied to the case presented by him has the effect to deprive him of due process of law.

ID.—OPTION OF OWNER TO CONTEST ASSESSMENT.—The owner of the land is not deprived by the bond act of the right to challenge the

validity of the assessment, or to defeat its enforcement for substantial irregularity; but he has the option, before the bond can be issued, to insist upon the collection of the assessment by suit, in which he may present all defenses, either in matters of jurisdiction or irregularity of proceedings.

ID.—VALIDITY OF CONTRACT FOR STREET WORK—TIME OF COMMENCEMENT AND COMPLETION.—A contract for street work, which provides that the work is "to be commenced within ten days from the date hereof, and its completion to be within two hundred and forty days thereafter," sufficiently fixes the time for the commencement and completion of the work.

ID.—MANDAMUS—SALE UNDER BOND ACT.—Where there is no jurisdictional defect constituting a defense thereto, *mandamus* will lie at the suit of contractors for a street improvement holding a bond issued to them under the provisions of the street bond act of 1893, to compel an advertisement and sale at auction of delinquent land subject thereto, to be made in pursuance of the provisions of the Political Code then in force, for the sale of delinquent taxes.

APPEAL from a judgment of the Superior Court of Los Angeles County. M. T. Allen, Judge.

The facts are stated in the opinion of the court.

W. E. Dunn, for city treasurer, Appellant.

R. A. Redman, for intervenor, Appellant.

C. W. Chase, *amicus curiae*, for Appellants.

Finlayson & Finlayson, for Respondents.

HARRISON, J.—The city council of Los Angeles, in January, 1896, ordered the improvement of a portion of Sixth street in that city in accordance with the provisions of the street improvement act, and the work thus authorized was completed to the satisfaction of the superintendent of streets, and an assessment made therefor by him. Before passing its ordinance of intention therefor the city council found, upon estimates of the city engineer, that the cost of the work would be in excess of one dollar per front foot along the line of the street upon which the improvement was to be made, and thereupon determined that serial bonds should be issued to represent the cost of the improvement, in accordance with the provisions of the act of February 27, 1893 (Stats. 1893, p. 33), and so declared in its ordi-

nance of intention. After the completion of the work, the assessment, together with the warrant for its collection attached thereto, and the certificate of the city engineer, were recorded by the superintendent and delivered to the contractors, the plaintiffs herein, and within thirty days thereafter the said warrant, with the return indorsed thereon, was returned to the said superintendent, and by him recorded in the margin of the aforesaid record. No appeal was taken to the city council, and, after the expiration of thirty days from the date of the warrant, the superintendent certified 'to the city treasurer a list of the assessments which amounted to fifty dollars and over, and which remained unpaid, among which was an assessment upon the lot of land described in the complaint herein amounting to one hundred and twenty-eight dollars and thirty-three cents. Thereupon, March 23, 1897, the city treasurer made out and issued to the said contractors, the plaintiffs herein, a bond representing the amount of this assessment against said lot of land, in accordance with the form prescribed in the aforenamed statute, by which the first installment of interest thereon was made payable July 2, 1897. No payment was made for either principal or interest on said bond, and on July 16, 1897, the plaintiffs herein elected to declare the whole amount unpaid to be due and payable, and demanded in writing of the city treasurer that he proceed to advertise and sell the lot of land upon which said bond was issued to pay the same with interest thereon, and again on the 19th of July delivered to him a written demand that he forthwith proceed to advertise and sell said land by proceedings in all respects the same as were provided by law for the collection of delinquent state or county taxes, ȯn the 27th of February, 1893. The city treasurer, the defendant herein, failed to so advertise or sell the same, and gave to the plaintiffs a written statement to the effect that he refused to sell the said lot of land to any purchaser whatever except to the "state," as provided by section 3771 of the Political Code, as amended March 28, 1895. The plaintiffs thereupon applied to the superior court for a writ of mandate commanding the defendant as such city treasurer to proceed forthwith to advertise and sell said lot under proceedings in accordance with their aforesaid demand. A complaint in intervention was filed by the intervenor herein, claiming to be the owner of said land. A de-

murrer to the complaint of the plaintiffs was overruled, and the defendant thereupon filed an answer to which a demurrer of the plaintiffs was sustained. The plaintiffs also demurred to the complaint in intervention, and their demurrer having been sustained, judgment was entered in favor of the plaintiffs, from which the defendant and the intervenor have appealed.

1. Section 5 of the act of February 27, 1893, after providing for the sale of the land to satisfy the amount of the bond in case of delinquency in its payment, declares that "the city treasurer shall have and shall act thereafter with all the powers and duties of the tax collector in the collection of unpaid state and county taxes; and shall forthwith proceed to advertise and sell said lot or parcel of land by proceedings in all respects the same as are provided by law for the collection of delinquent state and county taxes." At the date of that act the Political Code, section 3771 et seq., provided that in case of delinquent state and county taxes the tax collector should sell the real estate of the delinquent upon which the taxes were a lien at public auction, to the person who would take the least quantity of land and pay the taxes and costs of sale, and that, in case there should be no redemption therefor within a year, the purchaser should be entitled to a deed of conveyance of the land so purchased. In 1895 (Stats. 1895, p. 327), section 3771 of the Political Code was amended by providing that, instead of selling the land at auction, the property upon which the taxes are delinquent "shall by operation of law and the declaration of the tax collector be sold to the state, and said tax collector shall make an entry 'Sold to the state' on the delinquent assessment list opposite the tax." It is contended by the appellants that by this amendment to the Political Code its provisions are *ipso facto* incorporated into the act of February 27, 1893, and that the city treasurer can proceed only in accordance with the provisions of the Political Code, as thus amended.

It is a rule of statutory construction that the adoption in one statute, for the purpose of carrying its provisions into effect, of the provisions of another statute by reference thereto, does not include subsequent modifications of these provisions in the statute referred to, unless a clear intent to do so is expressed. This rule is subject to a qualified exception in cases of the adop-

tion into a special act of the provisions of law then in force by virtue of general laws.  In such cases, subsequent modifications of the general law will be deemed to be within the intent of such adoption, so far as they are consistent with the purposes of the particular act.  (See *Kirk v. Rhoads,* 46 Cal. 403.) · A repeal of the adopted statute will not take from the adopting statute the operative force of these provisions, so far as they may be necessary to carry the later statute into effect, but these provisions will be regarded as if they had been originally incorporated therein at length.  (*Spring Valley W. W. v. San Francisco,* 22 Cal. 434; *People v. Clunie,* 70 Cal. 504; *Collins v. Blake,* 79 Me. 218; *Darmstaetter v. Moloney,* 45 Mich. 621; Sutherland on Statutory Construction, sec. 257.)  Under the same principles, any amendment of these provisions of the statute thus adopted, whether it be a particular act or a general law, which so far modifies them as to subvert the purpose of the statute by which they were adopted, will be regarded in the same light as a repeal.  The main object of all statutory construction is to ascertain the legislative will, and, as it is to be assumed that the legislature intends its acts to have effective operation, such amendments will not be construed as depriving the adopting statute of all effect, unless there is a clear necessity for such construction.

A comparison of the act of 1893 with the provisions of the Political Code, as amended in 1895, shows that the provisions in the latter as thus amended are entirely inapplicable to the former, and ineffective to carry its objects into effect.  The provision in section 5 above quoted was to enable the contractors to receive the amount of the assessment as the several installments should mature, and to provide means for enforcing its collection in case of delinquency.  The provision for a sale of the land at public auction to anyone who would pay the assessment, with the right in the contractor to become such purchaser, was an efficient mode of securing such payment, but if, instead thereof, the land should be struck off to the state with no power for its sale within five years, and no fund from which to pay the amount for which the sale was made, there would be no means by which the contractor could receive his payment, and the entire purpose of the act would be frustrated.  We hold, there-

fore, that the above amendments to the Political Code in 1895 are inapplicable to the provisions of the act of February 27, 1893, and that the sale of land for delinquency in the payment of the bond is to be made according to the provisions of the law for the collection and enforcement of taxes at the date of the act.

2. The obligation of the defendant to proceed to advertise and sell the land is further contested upon the ground that the statute under which the bond was issued, and which directs such sale to be made, is unconstitutional in that by its provisions the owner of the land is deprived of his property without due process of law. This contention is based upon the provision in section 4 of the statute that "the assessment shall be a first lien upon the property affected thereby until the bond issued for the payment thereof and the accrued interest thereon shall be fully paid," and the further provision that "said bonds, by their issuance, shall be conclusive evidence of the regularity of all proceedings thereto under said street work act and this act, previous to the making of the certified list of all assessments unpaid to the amount of fifty dollars or over by the street superintendent to the city treasurer, and of the validity of said lien up to the date of said list."

The power of the legislature to declare any evidence conclusive against the right of an individual to controvert it in any action which involves the taking of his property, has been extensively considered in cases involving taxation. It may be regarded as settled that the legislature may make a tax deed conclusive evidence of a compliance with all provisions of the statute which are merely directory of the mode in which the power of taxation may be exercised, but that it cannot make it conclusive evidence of those matters which are essential to the exercise of the power; that as to those steps which are jurisdictional in their nature, and without which the power of taxation cannot be called into exercise—such as the listing or assessment of the property, a levy of the tax, some notice of its delinquency, and that the property will be sold therefor—the legislature cannot deprive the owner of the right to show want of compliance. Mr. Cooley says (Cooley's Constitutional Limitations, 452): "A statute which should make a tax deed conclusive evidence of a

complete title, and preclude the owner of the original title from showing its invalidity, would be void, because being not a law regulating evidence, but an unconstitutional confiscation of property." And in his treatise on Taxation he says (Cooley on Taxation, 2d ed., 521): "The legislature cannot make the tax deed conclusive evidence of the holder's title to the land, or of the jurisdictional facts which would make out title, but the legislature might doubtless make the deed conclusive evidence of the correct performance of all mere acts of routine, and of acts in which the public, rather than the taxpayer, was specially concerned; in short, of everything except the essentials." In *McCready v. Sexton*, 29 Iowa, 389, 4 Am. Rep. 214, the supreme court of that state said: "The legislature may prescribe the time or manner in which these essential and jurisdictional acts shall be done, but it cannot, either constitutionally or in the nature of things, provide for passing the title to property for the nonpayment of taxes without them. As to the time or manner in which they shall be done, the discretion of the legislature is absolute and supreme, and cannot be judicially controlled or interfered with. Having the right to prescribe the manner, it may also rightfully provide that a failure to comply with its directions as to manner shall not defeat the end, or that no person shall question the legality of the manner, and that any subsequent act or fact shall be either *prima facie* or conclusive evidence that the law as to time or manner was complied with. As to the essential and jurisdictional facts, so to speak, which the legislature cannot annul or change, it cannot excuse the nonperformance of them, and, of course, cannot make the doing of any other thing a substitute for them or conclusive evidence of their being done." (See, also, *Rollins v. Wright*, 93 Cal. 395; *Haaren v. High*, 97 Cal. 445; *Ensign v. Barse*, 107 N. Y. 329; *Williams v. Board of Supervisors*, 122 U. S. 154; *Chamberlain v. Taylor*, 36 Hun, 24.)

This question has generally arisen in cases in which tax deeds have been made conclusive evidence of certain preliminary steps, and also in determining the effect of curative acts, but whenever it is within the power of the legislature to give this force to evidence, the species of evidence to which it is given is immaterial, and it may also declare the effect of the evidence in ad-

vance of its existence as well as subsequent thereto. As was said in *McCready v. Sexton, supra:* "Whatever the legislature is at liberty to authorize or not, it may waive or estop denial, but not so as to that which it must require." The declaration in the statute herein that the issuance of the bond shall be conclusive evidence of the validity of the lien, is to be regarded with the same effect as a similar declaration with reference to the deed that might be issued upon the sale therein authorized, for, if the lien is to be held valid and paramount to all other claims, the purchaser at the sale will obtain the property freed from any right in the owner to contest his title.

It must be held, therefore, that the provision in the statute that the issuance of the bond is conclusive evidence of the validity of the lien was without the power of the legislature to enact, and is, consequently, unavailing to the plaintiffs.

Although this provision in the statute was without the power of the legislature to enact, the remaining provisions, relating to the effect of the issuance of the bond as evidence, are not necessarily invalid. We have seen that the legislature had the authority to declare that the issuance of the bond should be conclusive evidence of certain facts, provided such facts were not essential to the jurisdiction of the officers to create the assessment; and to the extent that the legislature could exercise this power it should be upheld. In the first portion of the sentence above quoted the legislature has not assumed to make the bond conclusive evidence of the existence of any jurisdictional fact, or that any step essential to the creation of an assessment has been taken, but has merely declared that it shall be conclusive evidence of the "regularity" of all proceedings prior thereto. This clause does not necessarily imply that any proceedings were in fact taken, but is limited to the "regularity" of such as were taken, and leaves the owner at liberty to show in defense of his property that no jurisdiction to authorize the work or to make the assessment was in fact acquired. Such provision in a statute is held to apply only to proceedings to be had after the right and power to sell are acquired. (*Doughty v. Hope,* 3 Denio, 249; affirmed in court of appeals, 3 Denio, 594; 1 N. Y. 79; *Tallman v. White,* 2 N. Y. 66; *Ensign v. Barse, supra.*) To the extent that the provisions of the statute are within the constitutional

power of the legislature, it is to be sustained, and only that portion thereof rejected which the legislature had no power to enact. Hence, in determining whether, in any particular case, the provisions of the statute which are invoked in support of the bond are such as were without the power of the legislature to make, it is necessary in the first place to determine whether the proceedings of which the issuance of the bond is made conclusive evidence were of a jurisdictional nature, or whether they related merely to the regularity in the manner or time of exercise of its jurisdiction. As was said by the supreme court of the United States in *Castillo v. McConnico*, 168 U. S. 680: "The plaintiff in error has no interest to assert that the statute is unconstitutional because it might be construed so as to cause it to violate the constitution. His right is limited solely to the inquiry whether in the case which he presents the effect of applying the statute is to deprive him of his property without due process of law."

Turning now to the respect in which the appellants claim that the proceedings were defective, we find that the only defect alleged in response to the plaintiff's application is that the contract for doing the work provided "the work to be commenced within ten days from the date hereof, and its completion to be within two hundred and forty days thereafter"; and it is urged that the superintendent did not thereby "fix" the time for the commencement and completion of the work, as required by the statute. In *Palmer v. Burnham*, 120 Cal. 364, we held that a similar provision in the contract in that case was a sufficient compliance with the statute, and under the authority of that case it must be held that the appellants presented no defense to the application of the plaintiffs.

It may be added that the statute does not deprive the owner of the right to challenge the validity of the assessment, or to present any irregularities in the proceedings therefor which would defeat an action for its enforcement, since it is provided by section 4 that at any time before the issuance of the bond the owner may notify the city treasurer that he desires no bond to be issued for the assessment against his land, and that upon such notice no bond shall be issued therefor, but the payee of the warrant must enforce the collection of the assessment by

action.  As the bond cannot be issued until after thirty days
from the date of the warrant, and as the assessment must be
demanded within that period of time, the owner has at all times
the option to insist upon the collection of the assessment by a
suit therefor in which he may present all defenses, either in
matters of jurisdiction or irregularity of proceedings.

The judgment is affirmed.

Van Dyke, J., and Beatty, C. J., concurred.