[Civ. No. 15049. First Dist., Div. One. Feb. 17, 1955.]

IRVING B. LITCHFIELD et al., Respondents, v. COUNTY OF MARIN et al., Defendants; GEORGE MIDDLETON, Appellant.

M. Anderson Thomas, Edwin H. Williams and Eli D. Langert for Appellant.

Freitas, Freitas & Allen and Freitas, Allen, McCarthy & Bettini for Respondents.

FINLEY, J. pro tem.*—This is a second appeal in this action which was commenced by respondents for the purpose of quieting their title to certain real property in Marin County purchased at a tax sale. The first appeal is reported in 83 Cal.App.2d 730 [189 P.2d 750]. Therein the court reversed a judgment quieting title in plaintiffs, the respondents here, and ordered a new trial on the ground that there was a defect in the proof of chain of title in plaintiffs. This appeal is from the judgment entered upon the new trial, again quieting title in plaintiffs to the property in question.

The facts are not materially disputed. The action concerns some 26 lots situate in the city of San Rafael in Marin County, California. Prior to 1928 Beatriz Michelena Middleton and her husband, George Middleton, purchased the lots which were described in a single deed as delineated and designated on a map entitled "Lands of Forbes Subdivision, No. 3, San Rafael, Marin County, California." This property was purchased for the purpose of conducting a movie studio thereon and title was taken in the name of Beatriz Michelena Middleton who was an actress and part owner of a motion picture company.

The 26 lots so purchased were situate 13 on each side of a street or roadway designated on the map as Central Avenue.

*Assigned by Chairman of Judicial Council.

Not all of them, however, faced upon this street or roadway. On the south side Lots 21 to 29 inclusive and on the north side Lots 30 to 36 inclusive faced thereon. Lots 1 to 4 were double width lots and lay south of and contiguous to Lots 22 to 29 inclusive and faced upon Colloden Avenue. Lots 56 to 61 inclusive lay north of and contiguous to Lots 30 to 36 inclusive and faced upon Forbes Avenue.

Prior to 1928 the Middletons constructed several buildings and made improvements upon Lot 1, upon Lots 30 and 31, upon Lots 56, 57 and 58, and upon Lot 61. All other lots, 19 in number, were unimproved. About midsummer, or toward the end of the year 1930, all the buildings and structures theretofore erected on the lots mentioned were removed so that after 1930 no building improvements remained upon any of them.

Although this property appears on the plat or map of Forbes Subdivision No. 3 as 26 separate lots divided by a street, it was assessed as a unit. In addition the improvements were assessed to the whole property and not to the separate lots upon which they were constructed.

All taxes assessed were paid on all the lots until the fiscal year commencing July 1, 1928, but no payments were made thereafter. The property was sold to the state on June 22, 1929, and deeded to the state on June 23, 1934. It was assessed to Mrs. Middleton until sold to the state.

In 1938 a 10-year installment program for the redemption of the properties was begun and it was restored to the tax rolls for 1939 and 1940, but after the initial payment no further installments were paid and it was again dropped from the rolls. Mrs. Middleton died in 1942. Between 1937 and 1941, and prior to her death in 1942, Mrs. Middleton sold 10 of the 26 lots and these were apparently redeemed by the purchaser. On July 28, 1944, the tax collector received a written bid of $1,500 for Lots 24 and 25 as one parcel and requested authorization from the State Controller to sell all the lots. Two separate authorizations were issued by the controller, one for the sale of Lots 24 and 25 as a unit at a unit price, the other for the sale of the remaining 14 lots at specific prices which were the least amounts acceptable as bids for the respective lots.

Notice of sale of the two lots to be sold as a unit, namely, 24 and 25, was published in the Fairfax Gazette, a newspaper in Marin County, but not in San Rafael, the city in which the property is located. The publisher of the Gazette executed a

certificate of publication but failed to swear to said certificate before a notary. Notice of sale of the remaining 14 lots was published in the San Rafael Independent.

In connection with the sales the tax collector mailed two notices by registered mail addressed to Beatriz Michelena Middleton, San Rafael, California, and also a so-called "courtesy notice" to defendant George Middleton, which he admitted receiving before the date that any of the tax sales took place. In 1928 when the property became delinquent and was sold to the state the address of Beatriz Michelena Middleton appeared on the tax roll as "Warden Tract, S.R." In 1934 when it was deeded to the state the address appearing on the roll was merely "San Rafael." In 1940, after the property had been placed back on the rolls as a result of the redemption program the address appeared "care of A. P. Black, 114 Sansome Street, San Francisco, California."

In 1944 the Marin County Tax Collector, on behalf of the state, sold at public auction the lots theretofore deeded to the state. Respondents were the high bidders and received deeds from the state. Thereafter, on November 30, 1944, respondents filed this suit to quiet title, naming as defendants the county of Marin, city of San Rafael, George Middleton and Thomas B. Boyd, administrator of the estate of Beatriz Michelena Middleton, deceased. The county of Marin and city of San Rafael filed disclaimers and Thomas B. Boyd was replaced by appellant George Middleton as administrator of the estate of Beatriz Michelena Middleton, leaving George Middleton, individually, and in such representative capacity, as the only remaining party defendant. The case was tried before the court without a jury and on the facts above summarized the court entered its decree quieting title in plaintiffs. Thereafter a supplemental motion to vacate the decision and a motion for a new trial by defendant were denied, and this appeal followed.

Appellant urges 11 reasons for reversal of the judgment. Stated in general terms the primary question to be answered is whether the curative statutes passed by the Legislature in the year 1943 and following were effective to cure any or all of the claimed irregularities in the process of assessing the property, in deeding it to the state, or in the procedure followed by the tax collector in selling it to respondents as tax delinquent property.

We start with the elementary premise that under the provisions of both the federal and state Constitutions prop-

erty may not be taken from the individual owner without due process of law. In passing curative statutes the state Legislature cannot rise above this constitutional limitation. It is quite generally conceded that the Legislature may legalize by rescript those acts and omissions which, subject to this limitation, it could have required or omitted to require in passing original legislation. (*City of Compton* v. *Boland,* 26 Cal. 2d 310 [158 P.2d 397] ; *Barrett* v. *Brown,* 26 Cal.2d 328 [158 P.2d 567] ; *Peterson* v. *Johnson,* 39 Cal.2d 745 [249 P.2d 17].) This, then, brings us to the question : What in the process of assessment, or collection of a tax, or sale of property for nonpayment thereof, is jurisdictional as an element of due process and therefore mandatory, and what is nonjurisdictional and therefore subject to legislative regulation? In the case of *Miller* v. *McKenna,* 23 Cal.2d 774, at page 782 [147 P.2d 531], the court lists four jurisdictional requisites of due process not subject to waiver by curative statutes. Respondents contend that the list covers all jurisdictional requisites; that there are no others. Appellant as stoutly maintains that the list is not all-inclusive and points to the use by the court of the word *"among"* in *Miller* v. *McKenna, supra,* in the following discussion appearing on page 782 : ''But the Legislature cannot cure defects which are sometimes termed jurisdictional. *Among* the jurisdictional requisites are (a) a duly constituted taxing authority; (b) property to be taxed within the territorial jurisdiction of the taxing body; (c) property or subject matter legally subject to the tax; and (d) sufficient notice and opportunity for hearing to constitute compliance with due process. [Citing cases.]'' (Emphasis added.)

In further support of the contention that this list is not all-inclusive appellant cites *Ramish* v. *Hartwell,* 126 Cal. 443 [58 P. 920], for the proposition that in addition to the four jurisdictional requisites listed in *Miller* v. *McKenna, supra,* there are two others, viz: ''the listing or assessment of the property, a levy of the tax, some notice of its delinquency, and that the property will be sold therefor . . .'' (P. 448.) This seems to be an enumeration of three rather than two requirements. *Ramish* v. *Hartwell, supra,* is cited by the court in *Miller* v. *McKenna, supra,* so it must be assumed that the court in the latter, which is also a much later pronouncement by our Supreme Court, had in mind the statement just quoted from *Ramish* v. *Hartwell, supra,* and either upon further consideration concluded that all the factors therein mentioned were not essentially jurisdictional or that the four

requisites enumerated in *Miller* v. *McKenna, supra,* were sufficiently broad to encompass them.

It seems obvious from much of the discussion appearing in his brief that appellant is confusing use of the word jurisdiction as it applies to the carrying out by the assessor or tax collector of the necessary statutory procedural mandates and use of the word as applied to the constitutional sphere within which the Legislature may enact binding legislation. Appellant calls attention to such cases as *Campbell* v. *Moran,* 161 Cal. 325 [119 P. 89] ; *Smith* v. *Furlong,* 160 Cal. 522 [117 P. 527] ; *Clayton* v. *Schultz,* 22 Cal.App.2d 72 [70 P.2d 512], and *Smith* v. *Boston,* 161 Cal. 341 [119 P. 91]. These cases all involved and were concerned with the question of whether statutory requirements had been followed with sufficient exactitude by the assessor or tax collector so that jurisdiction had been gained by the tax collector to legally exercise the power of sale on account of nonpayment of taxes. The question of jurisdiction as the word applies to authority of the legislative body to legally act was not involved excepting in *Smith* v. *Furlong,* where on pages 527-528 the court has this to say : ''In the *Bank of Lemoore* case the attack was on the validity of the deed *to* the state for failure on the part of the assessor to enter (as required by section 3680 of the Political Code) upon each subsequent assessment of the property after its sale for delinquent taxes the words 'sold for taxes' with the date of sale. This was not done and it was claimed that the making of such a memorandum by the assessor constituted a part of the notice which, in addition to the notice of sale to be given by publication, as provided by law, should be given to the delinquent owner and that failure to give it amounted to depriving him of his property without due process of law. It was held that notice by publication of the sale being all the notice that a delinquent owner was constitutionally entitled to it was not essential that the legislature should have provided for giving this memorandum notice at all; that the legislature in the first instance might have dispensed with this notice provided to be given by the assessor entirely or having provided for it make, as it did by section 3787, the deed *to* the state conclusive evidence that it had been given.''

█ A proceeding by a taxing agency to avail itself of property on which taxes have not been paid is obviously an action in rem and the same general rules should apply as apply to any such action. █ No in rem proceeding is valid

where real property directly sought to be reduced to dominion for purposes of sale to satisfy a direct tax lies without the territorial limits of the taxing agency. (*Hicks* v. *Corbett, ante,* p. 87 [278 P.2d 77].) ██ Even though property lies within the territorial limits of a taxing agency, if such agency has no constitutional authority to assess and collect upon it no action in rem will lie to obtain direct dominion over the property for purposes of sale. ██ It certainly cannot be questioned as a matter of simple reason that any purported taxing agency must have sovereign sanction in order to have even de facto power to tax, and any other agency assuming to transgress would be without any legal standing whatever. ██ The existence of a taxing agency duly sanctioned by law is then quite obviously jurisdictional to the exercise of this power, not as the word is applied to procedural questions but as it is applied to the naked power to exercise any such right at all.

██ The questions of notice and due process are so inextricably part and parcel of each other that there could be no due process without the sovereign following some procedure which according to common experience should reasonably give notice of impending interference with ownership or right to possession. But there is no constitutional mandate of which we are aware which makes specific how that notice is to be given or which form it must take. ██ Therefore the Legislature in prescribing the notice to be given as an essential element of due process is limited only by the inferred constitutional mandate that the notice must be such as would according to common experience be reasonably adequate to the purpose. ██ It is not enough to say that because different sovereign agencies may differ in some requirements and that because some may employ different methods of conveying notice to the owner than others, the one requiring the least notice is thereby denying due process. If measured by common everyday experience the least notice actually required should appear reasonably adequate under the circumstances to inform the owner, then it is within the constitutional power of the sovereign agency to so limit it. ██ If it can be so limited in the first instance, then later a curative statute may legally forgive the failure to comply with any requirement in excess of the minimum.

Appellant seeks to expand the general requirements enumerated in *Miller* v. *McKenna, supra,* by breaking them down into component parts and calling each of these component

parts an additional requirement. But if we analyze the purported additional requirements listed by appellant we find that they are all encompassed by the four set forth in *Miller* v. *McKenna*.

Appellant cites as examples of alleged additional jurisdictional requisites "the listing or assessment of the property, a levy of the tax" mentioned in *Ramish* v. *Hartwell*, *supra*, 126 Cal. 443, at page 448. With this position we do not agree. Were property never assessed or taxed the problem would never arise for there would be no question of sale for taxes if there were no tax. But if within the boundaries of a duly constituted taxing authority certain property was overlooked and not listed on the tax rolls or assessed for a time, can it be said that a tax rate fixed and levied during this time upon all nonexempt property in the district would impose no liability upon the overlooked property for its proportionate share of the tax within any reasonable limitation period that the law might provide? Appellant cites no authority on this proposition other than the general statement quoted from *Ramish* v. *Hartwell, supra*. No reason is advanced nor authority supplied for the proposition that it would be unconstitutional, or would deprive an owner of his property without due process of law for the sovereign to insist upon an owner whose property had been so overlooked paying his just tax after proper notice and opportunity to respond or that it would be depriving him of his property without due process of law to sell the property for nonpayment of taxes after reasonable notice if the owner did not so respond. It seems quite obvious that a temporary oversight in assessing or levying a tax upon a particular piece of property would not be a jurisdictional bar to collecting a proportionate tax on this property within a period of statutory limitation.

In any event, that particular point is not involved here. In the instant case we have the duly constituted taxing authority; property legally subject to be taxed within the territorial jurisdiction of this authority; an assessment and the levy of a tax; and notice and an opportunity for hearing which we consider quite adequate under the circumstances to have gained jurisdiction over the property for the purposes of a valid sale for nonpayment of the tax. (See *Barrett* v. *Brown, supra*, 26 Cal.2d 328, 330-331.)

There is no constitutional reason why the sovereign cannot require reasonable vigilance on the part of owners in

calling attention to any claimed irregularity in the assessing or taxing of their property, nor is there any constitutional prohibition against a sovereign agency relying on the defense of estoppel where this is not done. Appellant complains that the property was not assessed as separate lots or parcels but was assessed as a single unit, even though a graded and paved road ran through the property dividing it into two separate parcels. But there is no evidence that it had not always been so assessed while owned by the Middletons or that any complaint had ever been made at any time on this account. Appellant also complains that improvements on certain of the lots were still assessed and taxed after they were removed entirely from the property and the tax levied made a lien upon the real estate. Here also there is no evidence that the assessor was ever informed of the removal of the improvements or that any complaint had ever been made by the Middletons or anyone else to the assessor or to the board of equalization. By following the simple expedient of reporting such removal the assessment and tax on these improvements could have been adjusted. It is not the privilege of an owner of property to shift the responsibility of watching after his own interests to the shoulders of those who represent the sovereign. ▮ Appellant here having failed over a period of years to report the removal of the improvements and having failed in good season to complain of the tax levied upon them, he is now estopped at this late date from successfully relying upon this point to invalidate the sale. The improvements were within the territorial jurisdiction of the taxing body and properly subject to tax at the time of the original assessment and levy. No property was taxed which was not taxable. ▮ Any error was as to valuation only, which upon application the board of equalization would have corrected. The most that can be said is that the assessment may have been too high after the improvements were removed, but this did not constitute it an illegal tax. (*People* v. *Arguello*, 37 Cal. 524; *Blinn Lbr. Co.* v. *County of Los Angeles*, 216 Cal. 474 [14 P.2d 512, 84 A.L.R. 1304]; *Ambassador Hotel Corp.* v. *Los Angeles County*, 94 Cal.App. 143 [270 P. 726]; *Mahoney* v. *City of San Diego*, 198 Cal. 388 [245 P. 189].)

▮ Also raised by appellant is the point that curative acts do not apply to pending litigation. This point was directly ruled upon contrary to appellant's contention in *Miller* v. *McKenna, supra*, 23 Cal.2d 774, where at page 781

the court states: "No doubt may be entertained of the general power of the Legislature to enact statutes to validate prior tax proceedings. Many cases recognize that power. [Citing cases.] And a proper validating act may be effective as to pending litigation. [Citing cases.]" (See also *Barrett* v. *Brown, supra,* 26 Cal.2d 328; *City of Compton* v. *Boland, supra,* 26 Cal.2d 310; *City of San Diego* v. *Alpha Securities Corp.,* 99 Cal.App.2d 246 [221 P.2d 770].)

It will not be necessary here to discuss in detail the other points urged by appellant for reversal. Suffice it to say that we do not consider any one of them jurisdictional in nature and beyond the reach of the curative statutes passed in 1943 and thereafter. These points are listed by appellant as follows: "I. The original assessment in 1928 was totally void ab initio and was beyond the jurisdiction of the assessor or the curative acts. II. The tax sale to respondents was wholly illegal and void because of a jurisdictional defect, namely, the failure of the tax collector to send notice by mail to the last known address of the last assessee. III. The tax collector had no jurisdiction to sell because there is no evidence that the consent of the Board of Supervisors was obtained. IV. The tax collector had no jurisdiction to make the sale and the sale is invalid because the consent of the controller was insufficient. V. The tax collector had no jurisdiction to sell lots 24 and 25 because the affidavit of publication was not sworn to. VI. The tax collector was without jurisdiction to sell the property as eleven separate parcels for eleven different prices. VII. The sale by the state was void because the tax collector had no jurisdiction to segregate the tax into sixteen different assessments. VIII. The court erred in holding that the tax validation acts cured the errors in the assessment, levy and sale. IX. It was error not to allow the motion to vacate the memo of decision and allow the introduction of additional evidence. X. The court erred in not directing that if the title of the plaintiffs was good, the sale and deeds should be set aside upon the reimbursement of the plaintiffs by the defendant. XI. The court erred in denying the motion for new trial."

As will be seen, none of the errors specified from I to VIII inclusive fall within any of the four jurisdictional classifications outlined in *Miller* v. *McKenna, supra,* excepting the one numbered II. This point has been discussed above. The notice referred to by appellant in II is notice of sale *by* the state and not notice of transfer of title by deed *to* the state. It is not therefore jurisdictional in nature for after

title has passed to the state and right of redemption terminated the state may without violating any rights of due process sell the property with or without notice to any individual prop-. erty owner by simply complying with legislative requirements. (*Mercury Herald Co.* v. *Moore,* 22 Cal.2d 269 [138 P.2d 673, 147 A.L.R. 1111] ; *Jacoby* v. *Wolff,* 198 Cal. 667 [247 P. 195] ; *City of Compton* v. *Boland, supra,* 26 Cal.2d 310.) If the Legislature can require it can also forgive any such requirement by curative legislation. The trial court found that the publication and notice of delinquency preceding sale to the state, as cured of errors by the curative acts, was sufficient to give actual and adequate notice to the owner and therefore that jurisdiction consonant with due process had been gained to transfer title to the state. We find no compelling reason to differ with the trial court. . We are satisfied that none of the other errors complained of is jurisdictional and that the validation acts of 1943 and 1945 were effective to cure any errors in procedure.

 Referring to point IX above, appellant's motion to reopen was predicated upon a proposal to introduce additional evidence concerning the layout of the property insofar as streets and location of lots are concerned. No suggestion is made that any of the property lay outside the boundaries or beyond the jurisdiction of the taxing authority. The motion was therefore properly denied.

Point X refers to an offer of settlement made by appellant at some point during the proceedings and complaint is made that the offer was not accepted and that the trial court would not inject itself into this phase of the controversy. No citation of authority is necessary to establish that this point is not well taken.

 As to point XI, appellant on motion for new trial offered nothing so far as the record discloses which indicates error or which upon a new trial would have placed the question of jurisdiction or denial of due process in issue. The motion was, therefore, properly denied.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied March 18, 1955, and appellant's petition for a hearing by the Supreme Court was denied April 13, 1955. Schauer, J., was of the opinion that the petition should be granted.