[Civ. No. 15651. Second Dist., Div. One. Sept. 2, 1947.]

ASSETS RECONSTRUCTION CORPORATION, LTD., (a Corporation), Appellant, v. THOMAS L. MUNSON, as Tax Collector, etc., et al., Respondents.

Leland S. Bower for Appellant.

P. J. Tscharner, City Attorney (Azusa), and John F. Bender, Special City Attorney, for Respondents.

YORK, P. J.—This is a suit in equity to enjoin defendants from terminating plaintiff's right of redemption in certain lots owned by it in Tract 8507 which were deeded to defendant city for nonpayment of taxes.

The complaint alleges that said municipality had been engaged in levying and collecting municipal taxes against property situate within its boundaries under Ordinance 154, adopted by its board of trustees on February 24, 1914, until about July 6, 1936, when the city council of said city adopted Ordinance 323, establishing a plan for the redemption of property sold to the city for delinquent taxes in conformity with the plan set up by state law on the same subject.

Section 1 of Ordinance 323 reads: "In all cases where real estate has been or may hereafter be sold to the City of Azusa for delinquent tax and/or assessment, and the property so sold is subject to redemption, the person whose real estate is so sold . . . may redeem said property from said sale, in the manner prescribed by State law in force at the time of said redemption . . . insofar as such State law is applicable, . . . it being the intention of this ordinance to hereby adopt and make effective as to the City of Azusa, the same plan, insofar as the same is applicable, for redemption of real property sold to the City of Azusa for delinquent tax and/or assessment, as is in force, at the time of such redemption, under State law,

for redemption of real property sold for delinquent County or State tax and/or assessment.''

Section 2 thereof provided that ''Any provisions of any ordinances heretofore adopted by and now in effect in the City of Azusa, contrary to the provisions of this ordinance, shall be and the same are, insofar only as the same inhibit the carrying into effect of the provision hereof, repealed; but as to all other matters and things, such ordinances shall be and remain in full force and effect.''

By section 3 it was declared ''that this ordinance is an emergency ordinance, and that an emergency exists, by reason of the fact that the plan provided by State law for redemption of real property, sold for delinquent County or State tax or assessment, differs from the plan for redemption of real property sold to the City of Azusa for delinquent City tax or assessment; that this difference in plans brings about confusion among the taxpayers of the City of Azusa and renders it difficult for the City of Azusa to collect delinquent taxes by way of redemption or otherwise, and that the adoption of the provisions of this ordinance is necessary to preserve the peace and general welfare of the City of Azusa.''

The complaint herein further alleges that on or about February 17, 1928, a street improvement bond was issued by the treasurer of said city to represent the unpaid assessment levied against each lot in Tract 8507, to pay its apportionment of the total amount of the costs and expenses for the improvement of certain streets in said city; that none of these bonds has ever been paid and each is a lien upon the property affected thereby; that more than 30 per cent of the original assessment parcels were delinquent on June 30, 1940, and that the lots owned by plaintiff represent more than 60 per cent of the original number of assessment parcels in the district; that the said property was deeded to the city of Azusa on or about April 20, 1944, for nonpayment of taxes and assessments which were levied thereon by the tax collector of said city; and that on September 6, 1945, defendant tax collector caused to be published in the Azusa Herald a notice to the effect that if the property therein described, including plaintiff's lots, which had theretofore been deeded to defendant city for nonpayment of taxes and assessments was ''not redeemed on or prior to four months after this notice of termination of right of redemption is sent, the time set for the termination of the right of redemption, the right of redemption as to such property will cease.''

It is further alleged that at the time of the publication of the aforesaid notice of termination of the right of redemption, plaintiff's lots "were situated in a distressed assessment district"; that said notice of termination of the right of redemption is illegal and void, and unless defendants are restrained from terminating plaintiff's right of redemption and enjoined from selling the real property thereby affected, plaintiff will suffer great or irreparable injury and damage.

Defendants' demurrer to the complaint was overruled and a preliminary injunction was granted. Thereafter, defendants filed their answer in which they alleged that on August 7, 1944, the city council of defendant city adopted Ordinance 377 "providing for a method of termination of right of redemption as to all real property deeded to the city for nonpayment of taxes"; that said ordinance "is now and was, at all times mentioned in plaintiff's complaint, in full force and effect and has not been repealed or amended."

When the cause came on for trial, the objection of defendants to the introduction of evidence on the ground that the complaint did not state facts sufficient to constitute a cause of action was sustained. At the same time defendants interposed a general demurrer to the complaint which was sustained by the court without leave to amend, and the temporary restraining order was dissolved. From the judgment which was thereafter entered, plaintiff has perfected this appeal.

■ Appellant claims that the termination of its right to redeem its property which was deeded to the respondent city on April 20, 1944, is prohibited by the terms of section 3495, Revenue and Taxation Code, as amended in 1945, to wit:

"The right of redemption of property deeded to the State on and after October 6, 1942, shall not be terminated after the effective date of this act (May 23, 1945) and prior to June 1, 1947, except by sales permitted under Section 3494 of this Code."

In this connection it is argued that by the enactment of Ordinance 323, respondent city *adopted* all the laws of the state relating to the subject of redemption of tax-deeded property, and that section 2 thereof *repealed* all provisions of any city ordinances theretofore enacted, including Ordinance 154, which were contrary to or inconsistent with such state laws. Also, that Ordinance 323 remained at all times in full force and effect, notwithstanding the enactment on August 7, 1944, of Ordinance 377, for the reason that the latter purported to

amend certain sections of Ordinance 154, which sections had theretofore been repealed by Ordinance 323.

As a matter of fact, Ordinance 377, insofar as it affects the subject here under discussion, to wit: the termination of the right of redemption of tax-deeded property, *instead of amending* the original Ordinance 154, *adds a new section thereto* which reads as follows:

"Sec. 36a. On and after June 1st, 1945, on execution of the deed to the City, the right of redemption is terminated as to all such property deeded. The right of redemption of property which was or is deeded to the City before June 1st, 1945, shall be terminated as provided under this·Section, if such right of redemption has not already been terminated. Within six months after the effective date of this Ordinance, or within six months after the execution of a deed to the City, if said deed is executed to the City subsequent to the date of this Ordinance, and prior to June 1st, 1945, the Tax Collector shall send a notice of termination of right of redemption to the last assessee of every assessment of such tax deeded property. The notice shall be sent by registered mail . . . shall state, (a) The time of termination of the right of redemption, (b) A description of the property, (c) That if the property is not redeemed before the time set for termination of the right of redemption, the right of redemption will cease. The Tax Collector shall also publish the notice of termination of right of redemption. . . . The publication by the Tax Collector . . . shall be made within ten days after the notice as to such property is mailed. . . . The time set for the termination of the right of redemption shall be four months after the notice of termination of the right of redemption is sent. If any property is not redeemed before the time set for termination of the right of redemption, the right of redemption as to such property is terminated."

Under section 871 of the Municipal Corporation Bill (2 Deering's Gen. Laws, Act 5233), respondent city was given the power "to provide by ordinance, a system for the assessment, levy and collection of all city taxes."

When respondent city by Ordinance 377 added section 36a to the original Ordinance 154, a new and revised method for termination of the right of redemption was effected entirely inconsistent with the prevailing State law on the subject, notably section 3495 of the Revenue and Taxation Code which prohibits such termination prior to June 1, 1947. As a con-

sequence, this new section repealed by implication those sections of Ordinance 323 which incorporated and adopted the state plan for the termination of the right to redeem tax-deeded property.

An amendment may be defined "as a legislative act designed to change some prior and existing law by adding or taking from it some particular provision. A provision which operates to repeal by implication a portion of a prior statute is not, properly speaking, an amendment. *Nor is an act which adds new sections to a code or statute an amendment* within the meaning of the provisions requiring that acts or sections revised or amended shall be re-enacted and published at length as revised or amended." (23 Cal.Jur. p. 680, § 71; emphasis added.)

As heretofore stated, Ordinance 323 was enacted as an emergency measure in order "to preserve the peace and general welfare of the City of Azusa," because of the confusion existing by reason of the difference between the city and state plans on the subject of redemption of tax-deeded property. ██ Although repeals by implication are not favored (23 Cal.Jur. 694), and are only found to exist where "it becomes apparent that the legislature did not intend the former act to remain in force" (23 Cal.Jur. 691), it is well settled that where a subsequent act is inconsistent or repugnant to a prior one, the last operates without any repealing clause as a repeal of the first (*Stockburger* v. *Jordan,* 10 Cal.2d 636, 646 [76 P.2d 671]); and that the latest legislative expression is controlling (*Pierce* v. *Riley,* 21 Cal.App.2d 513, 519 [70 P.2d 206], where it is stated: ". . . it is recognized as a rule of construction in determining which act is controlling . . . that the statute last approved particularly if it be a special act applicable to a particular subject, will be controlling over one which was previously approved, on the theory that it is the latest utterance of the legislature.").

██ Appellant urges that the right of redemption is a vested right and must be governed by the law in force at the time of sale.

In *Mercury Herald Co.* v. *Moore,* 22 Cal.2d 269, 272 [138 P.2d 673, 147 A.L.R. 1111], where it was contended that the termination of the right of redemption impaired the obligation of a contract, it was held:

"There is no contractual relationship, however, between the taxpayer and the state. (*Southern Service Co., Ltd.* v. *Los*

*Angeles County*, 15 Cal.2d 1, 11 [97 P.2d 963]; *Perry* v. *Washburn*, 20 Cal. 318, 350; *Spurrier* v. *Neumiller*, 37 Cal. App. 683 [174 P. 338].) The position of the taxpayer is not that of a purchaser who enters into a contract with the state in purchasing the property. The taxpayer's own failure to pay the tax leads to the sale of the land as an exercise of the sovereign power to collect the tax. (*Wood* v. *Lovett*, 313 U.S. 362, 371 [61 S.Ct. 938, 85 L.Ed. 1404]; *Yates* v. *Hawkins*, 46 N.M. 249 [126 P.2d 476, 478]; see *Anglo California Nat. Bank* v. *Leland*, 9 Cal.2d 347 [70 P.2d 937]; *Robinson* v. *Howe*, 13 Wis. 380, 386; *Muirhead* v. *Sands*, 111 Mich. 487 [69 N.W. 826, 828].) . . .

"Even if there was no distinction between the right to redeem before deed to the state and after, a change in the method of redemption would not necessarily be contrary to due process of law. While the law in effect at the time of the sale to the state governs the redemption of the property when the Legislature does not provide otherwise, it is settled that the Legislature may make retroactive changes in the method of redemption. . . . This power is not unlimited, however. The changes cannot be arbitrary or capricious but must be reasonable when measured in the light of the public interest to be served and the effect of the changes upon the rights of the property owner. [P. 274] . . . By providing for the redemption of the property after sale to the state in the event of delinquency, the state does not take the property outright from the owner, but allows him not only to retain the title but the right to remove the tax lien and clear his title to the property. It does not follow that because the state could provide in the first instance for a complete taking of the property it may with impunity provide retroactively for such a taking without giving the owner notice or a fair opportunity to prevent forfeiture of his property. (See *Wood* v. *Lovett*, 313 U.S. 362, 371 [61 S.Ct. 939, 85 L.Ed. 1404].) *It is settled, however, that the Legislature may validly limit the time within which an existing right may be exercised if the period remaining for its assertion is a reasonable one.* (*Alexander, Inc.* v. *United States*, (C.C.A. 5th) 128 F.2d 82; . . .) . . . In the present case, the redemptioner clearly received adequate notice and a fair opportunity to regain the property." (P. 275.)

Likewise, in the instant cause, the property was deeded to the city on April 20, 1944; section 36a was added to Ordinance 154 by the enactment of Ordinance 377 on August 7, 1944,

which became effective on September 6, 1944. Respondents waited for one year, to wit, until September 6, 1945, before giving notice that if the property was "not redeemed on or prior to four months after this notice of termination . . . is sent . . . the right of redemption as to such property will cease."

While appellant's complaint alleged that the property here in question was situated "in a distressed assessment district," there is no allegation that the board of supervisors found by resolution, or otherwise, that the improvement district came within the definition of a distressed assessment district, as defined by section 133, Revenue and Taxation Code, which finding is conclusive as to whether a district is or is not within a distressed assessment district.

In the light of the allegations of the complaint herein and the law in effect with respect to the termination of the right of redemption of property deeded to respondent city for non-payment of taxes, the trial court's action in sustaining respondent's general demurrer to the complaint without leave to amend and dismissing the action was proper.

For the reasons stated, the judgment is affirmed.

Doran J., and White, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 27, 1947. Carter, J., and Schauer, J., voted for a hearing.