[Civ. No. 3960. Fourth Dist., Nov. 2, 1949.]

JOSEPH S. WILSON et al., Respondents, v. SOLON S. KIPP et al., Appellants.

Solon S. Kipp and W. E. Starke, in pro. per., for Appellants.

Virgil S. Kipp for Respondents.

BARNARD, P. J.—This is an action to quiet title to Lots 10 and 11 in Block 13 of VALENCIA PARK, UNIT No. 2. The plaintiffs claim under tax deeds to and from the state, and the defendants claim to be successors to an intervening interest, thus becoming the record owners.

The complaint, filed February 2, 1948, alleges that the plaintiffs are the owners in fee and entitled to possession of the property. The answer, in addition to a general denial, alleges that the defendants are the owners in fee, in possession and entitled to possession.

The evidence discloses that these lots were sold to the state on June 29, 1929, for delinquent taxes levied in 1928; that they were deeded to the state on August 1, 1934; that they were deeded by the state to the plaintiffs on August 12, 1947;

and that these deeds were duly recorded. The defendants introduced various tax records for the purpose of showing that the deed to the state was invalid. They also introduced certain records upon which their claim as successors to an intervening right is based. The court found that the plaintiffs were, and are, the owners in fee and entitled to the possession of these lots; that the defendants have no right, title or interest therein; and that it is not true that the defendants are in possession or are entitled to possession. Judgment was entered quieting title in the plaintiffs as against the defendants, and the defendants have appealed.

The appellants attack the validity of the deed to the state. It is argued that the notices were illegal and voided the sale because the property was advertised for a sum which was one cent in excess of the proper amount, as shown by the assessment; that this error is jurisdictional; that because of this error the tax collector lacked the necessary power to sell the property; and that the statute of limitations does not apply because the notices and proceedings were void and because "the owner is not out of possession." All of the above contentions are sufficiently answered in our decisions in *Luberco, Ltd., etc.* v. *Kipp, ante,* p. 409 [210 P.2d 901], *Jones* v. *Bartlett et al., ante,* p. 418 [210 P.2d 903], and *Union Title Insurance etc.* v. *Thorp, ante,* p. 421 [210 P.2d 905], this day filed. Aside from the special point raised, no reason appears, under many decisions, why any error appearing in this connection would not be cured by the various validating and curative acts.

The appellants further contend, however, that these validating acts are ineffective here, and that these tax deeds are void, under the rule set forth in *Miller* v. *McKenna,* 23 Cal.2d 774 [147 P.2d 531], and *Hall* v. *Chamberlain,* 31 Cal.2d 673 [192 P.2d 759], because they are the successors to an intervening interest acquired through a deed given pursuant to a sale under a trust deed.

The following facts appear in this connection. On July 12, 1926, Peoples Finance & Thrift Company gave a trust deed to Union Trust Company, as trustee, and Lewis J. Utt as beneficiary. This trust deed covered property in HORTON's ADDITION TO SAN DIEGO and also some 30 lots in LAS ALTURAS VILLA SITES, and secured a note for $25,000 payable to Lewis J. Utt one year after date. About a month later, on August 19, 1926, Peoples Finance & Thrift Company deeded the same

lots in LAS ALTURAS VILLA SITES (but not the property in Horton's Addition) to Lewis J. Utt. In 1927, portions of LAS ALTURAS VILLA SITES were subdivided and became a new subdivision known as VALENCIA PARK, UNIT No. 2. The property in LAS ALTURAS VILLA SITES covered by the trust deed and deed above mentioned was included in this new subdivision. In 1928, Lots 10 and 11, Block 13, of VALENCIA PARK, UNIT No. 2, were assessed to Lewis J. Utt, this assessment being the one here in question.

On May 28, 1937, pursuant to a court order in the estate of Lewis J. Utt confirming the sale, the executrix deeded all of the right, title and interest of Lewis J. Utt and of his estate in VALENCIA PARK, UNIT No. 2, to Roy C. Lichty. On the same day Lichty gave back a trust deed covering all his right, title and interest in and to VALENCIA PARK, UNIT No. 2, with Union Trust Company as trustee and the estate of Lewis J. Utt as beneficiary. This trust deed secured a note for $12,000, payable over three years to the executrix of the Utt estate.

On August 1, 1939, the Union Title Insurance & Trust Company, the successor of Union Trust Company, filed notice of default under the original trust deed dated July 12, 1926, stating that there was a default in that the principal of $25,000 was not paid on July 12, 1927, that certain interest had not been paid, that the Union Title Insurance & Trust Company, as owner of said note and beneficiary of said trust, gave notice to the Union Title Insurance & Trust Company, as trustee, to sell the property to satisfy the obligation secured by said trust deed. We find nothing in the record to show that Union Title Insurance & Trust Company was the owner of the note, or that it was beneficiary under that trust deed. The only record before us is to the contrary. The next thing that appears is on October 23, 1942, when the Union Title Insurance & Trust Company gave a trustee's deed to The Rogan Corporation conveying about 150 lots in VALENCIA PARK, UNIT No. 2, including the two lots involved in this action. The deed recites that it was given after a public sale and pursuant to the notice of default filed on August 1, 1939, and because the principal sum of the note which became due on July 12, 1927, under the terms of the deed of trust given on July 12, 1926, "was not then fully paid." Lots 10 and 11, Block 13, of VALENCIA PARK, UNIT No. 2, was included among the large number of lots described in this trustee's deed and thus purportedly conveyed to The Rogan Corporation. On October 2, 1946, The Rogan Corporation quitclaimed

to the defendants in this action some 70 lots in VALENCIA PARK, UNIT No. 2, including the two lots here in question.

One fact here is different from those appearing in *Hall* v. *Chamberlain*, on which the appellants rely. In this case, before these lots were deeded to The Rogan Corporation in 1942, under the power of sale contained in the trust deed, section 3518 of the Revenue and Taxation Code, adopted in 1939, had made the deed to the state which was executed in 1934, conclusive evidence of the validity of proceedings leading up to that deed.

Whether or not that difference is material here, we think no sufficient intervening interest here appears, within the meaning of the rule relied on by the appellants, for the reason that all real interests in this property had actually and equitably merged in Lewis J. Utt the next month after the trust deed was given, the trustor having, on August 19, 1926, conveyed the property by grant deed to Utt, who was the payee of the note and the beneficiary under the trust deed. Although the trustee still retained the legal title the purpose of the trust was accomplished, if that conveyance was made as a payment of the obligation insofar as the land conveyed is concerned, and an equitable merger resulted. The rule which should be applied here is stated in *Shaffer* v. *McCloskey,* 101 Cal. 576 [36 P. 196], and approved in *Linforth* v. *Montgomery,* 195 Cal. 49 [231 P. 735], as follows:

" 'In law a merger always takes place when a greater estate and a less coincide and meet in the same person in one and the same right, without any intermediate estate. The lesser estate is said to be annihilated or merged in the greater; but a court of equity is not guided in this matter by the rules of law. It will sometimes hold a charge extinguished when it would continue to exist in law, and sometimes preserve it when at law it would be merged. The question is one of intention, actual or presumed, of the person in whom the interests are united.' "

In the Linforth case it was held that testimony to the effect that the trustor, after he conveyed the property to the trustee, had not been asked to pay the debt was admissible for the purpose of showing that the deed amounted to an extinguishment of the debt. In the instant case, the trustor, who had deeded the land to the trustee to secure a note for $25,000 payable to Utt, conveyed the land to Utt by grant deed about a month later. Although $25,000 had become due to Utt on

July 12, 1927, under the terms of the note and trust deed, the record shows that the note was "not then fully paid." Not only does this indicate that it was considered partially paid at that time, by transferring a part of the land to Utt, but nothing was done to enforce payment, as far as this land is concerned, until 1939, more than 12 years after the money would have been due. In the meantime the land had been assessed to Utt and had been sold in Utt's estate to Lichty, who gave a trust deed in favor of the estate to the same trustee as that named in the former trust deed. In the absence of any other evidence this justifies the inference that these lots were conveyed to Utt in August, 1926, as a full payment of the debt, insofar as these lots were concerned, and that it was so intended by the parties. Until this action was filed 22 years later no one, so far as shown by the record, had attacked the transfer to Utt or claimed that it was anything other than a payment of the debt, insofar as that land was concerned. For many years both the equitable interests, which as a practical matter were all of the real interests, were united in Utt and after his death were sold to Lichty, with a new trust deed given to the same trustee and securing a new debt to the estate. The appellants have not connected their title in any way with that of Lichty.

While the facts here may not be sufficient to show a merger in law, since the legal title remained in the trustee, this is a case where a court of equity should, as suggested in the cases above cited, "hold a charge extinguished when it would continue to exist at law." Under the circumstances shown by the record, nothing more appears than that the trustee continued to hold the naked legal title to the lots here in question and that when it sold them in 1942, upon default proceedings, it conveyed no more to The Rogan Corporation. For the purposes of this equitable action a merger sufficiently appears.

The deeds and trust deeds above referred to covered a large number of lots, some of them under different descriptions due to the different subdivisions, and it seems highly probable that the two lots here in question may have been erroneously included in the foreclosure proceeding leading to the trustee's deed to The Rogan Corporation in 1942. That sale may have been perfectly proper as to other portions of the property purportedly covered therein. Be that as it may, we think the appellants have not sufficiently established a right to this property, as against these tax deeds, under the intervening rights doctrine upon which they rely. All presumptions are

in favor of the judgment, the evidence is sufficient to support the court's findings and conclusions, and the contrary showing made is not sufficient to require or justify a reversal.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.