[Civ. No. 3959.   Fourth Dist., Nov. 2, 1949.]

UNION TITLE INSURANCE AND TRUST COMPANY (a Corporation), Appellant, v. HOWARD C. THORP, Respondent.

422

Solon S. Kipp and W. E. Starke for Appellant.

Virgil S. Kipp for Respondent.

BARNARD, P. J.—In this quiet title action the plaintiff claims as the record owner of the property and the defendant claims under tax deeds to and from the state.

The complaint, filed on July 2, 1947, alleged that the plaintiff is the owner and entitled to possession. The answer, in addition to a general denial, alleged that the defendant is the owner and entitled to possession, and that plaintiff's action is barred by section 3521 of the Revenue and Taxation Code. It also prayed for judgment quieting title in the defendant.

It was stipulated that the plaintiff was the owner of the land unless its title was divested by the tax proceedings and tax deeds. The evidence disclosed that the land was sold to the state in June, 1930, for delinquent taxes and assessments for the year 1929; that it was deeded to the state by a deed dated August 1, 1935, and recorded August 12, 1935; and that it was deeded from the state to the defendant by deed dated January 30, 1947. The defendant introduced in evidence certain of the tax proceedings upon which the deed to the state was based. The court found that the defendant was, and is, the owner in fee and entitled to possession of the property; that the plaintiff has no right, title or interest therein; and that plaintiff's action is barred by section 3521 of the Revenue and Taxation Code. Judgment was entered quieting title in the defendant and the plaintiff has appealed.

The property here in question is described as the "West one half of Lot Sixty-two, HORTON'S PURCHASE, in the Ex-Mission lands of San Diego, in the city of San Diego." This property was included in what was known as Acquisition and Improvement Districts Nos. 8 and 17 under the Act of 1925 (Stats. 1925, p. 849). Apparently, the west half of this lot was a

sizeable parcel and in District No. 17 it was divided into zones F, G, H and I, one-quarter thereof being in each zone. These zones were created by the district, a different percentage of the assessments being chargeable to each zone.

■ The appellant first contends that the county assessor, when assessing the property in 1929, failed to segregate and separately assess the portions of this half lot which were in these various zones, with the effect of charging parts of the property with assessments and charges for which they were not legally chargeable. It is argued that the entire half lot was sold for one sum which would thus include an excess amount because section 5 of the 1925 act, under which this district was formed, provides that assessments shall be levied on the lands in the respective zones and that the Resolution of Intention shall state the "percentages to be raised from the lands in each zone."

Section 5 of the 1925 act, thus relied on, relates to the formation of the district and the allocation of percentages to each zone in the Resolution of Intention and not to the form of the county's assessment book. In the assessment here in question the entire half lot was assessed to "Union Tr. Co. of S. D.," with a total value of $6,340 in the appropriate column. In other columns the portions of the property in each zone were separately assessed, with the assessed value of each portion and the tax thereon appropriately stated. These add up to the same total value and total tax. In these columns the amounts of the regular taxes and of the special improvement taxes were separately stated, and the total tax on the property within each zone appears as well as the total tax on the entire half lot. The assessment appears to conform with section 3650 of the Political Code, as then in force. The half lot in question was owned by and assessed to the Union Trust Company, the appellant's predecessor. No excessive tax appears either as to the whole lot or as to any zone, and the tax could have been paid or redemption made on the portion of the property within any such zone. Neither illegality nor prejudice to the taxpayer appears in this connection, as we understand the record.

■ It is next contended that the tax assessment for 1929 was defective because the assessor omitted from the assessment roll for that year various parcels of land in Districts No. 17 and No. 8, which had the effect of increasing the assessments on the portions of the half lot in question which were in the

various zones, these portions being charged with a percentage of whatever delinquencies had occurred with respect to other property. This is the objection which has frequently been raised to the "pyramiding" of assessments in the so-called Mattoon districts. By section 41 of the 1925 act, and as provided for in the Resolutions of Intention of these districts, any land belonging to the state of California was excluded. Such state-owned lands are within the exemption provided for in the Constitution. (*Sutter-Yuba Inv. Co.* v. *Waste,* 21 Cal.2d 781 [136 P.2d 11].) The exclusion of such lands under these circumstances has frequently been upheld. Any injustice resulting therefrom is a matter for legislative and not judicial correction. (*American Securities Co.* v. *Forward,* 220 Cal. 566 [32 P. 343].) The appellant admits that this point was unsuccessfully raised in *Devault* v. *Essig,* 80 Cal. App.2d 970 [183 P.2d 39], but argues that in the later decisions of *Hall* v. *Chamberlain,* 31 Cal.2d 673 [192 P.2d 759], and *Tannhauser* v. *Adams,* 31 Cal.2d 169 [187 P.2d 716, 5 A.L.R.2d 1015], "a different theory seems to have been presented." We are unable to see that any different theory was followed in those cases, with respect to the point now under consideration.

■ It is next contended that the tax collector lacked the power to sell this property to the state because of a variance of one cent between the amount shown on the 1929 delinquent roll and the amount shown in the published delinquent list, as advertised in June, 1930. That this contention is not available to the appellant under the circumstances here appearing is sufficiently established. (*Devault* v. *Essig,* 80 Cal.App.2d 970 [183 P.2d 39] ; *City of Compton* v. *Boland,* 26 Cal.2d 310 [158 P.2d 397] ; *Wall* v. *State of California,* 73 Cal.App.2d 838 [167 P.2d 740].)

It is next contended that the statute of limitations does not apply because of the nature of the defects in the proceedings, here relied on, and because it does not appear that the appellant was not in possession. Under the authorities above cited, and many others, no reason appears why plaintiff's action was not barred by section 3521 of the Revenue and Taxation Code. The only new contention here is based upon the suggestion made in *Tannhauser* v. *Adams* that in some circumstances such a statute might not run against one who is in possession of the property. We think that was intended to refer to an actual possession in the usual sense. No such possession was either alleged or proved here. So far as the record shows, the

property here in question was vacant and unoccupied, and any theory of constructive possession would apply equally to the appellant and to the respondent.

Appellant's final contention is that its right of redemption was illegally terminated. It is pointed out that section 3706 of the Revenue and Taxation Code provides that the right of redemption is in existence until the first bid is made, and that section 3707 states that the right of redemption terminates only upon the completion of the sale. It is argued that the tax collector here testified that it was his practice to refer to the numbers of the sales of pieces of property that he was about to sell and to state in advance that the next time he called the numbers of a sale "that would cease the right of redemption." There was no testimony that such a statement was made in this case. In any event, the statutes govern the termination of redemption rights and we are unable to see how this is in any way affected by anything said by the tax collector, in the absence of any showing that a party was misled thereby. There is no evidence that the appellant desired or offered to redeem at any time before or at the time the sale by the state was completed, although many years had elapsed since the assessment became delinquent.

We see no reason why this action was not barred by section 3521 of the Revenue and Taxation Code, why any possible defects or informalities were not cured by the various validating acts, or why the deed to the state here in question is not valid under the conclusive presumption afforded by section 175 of the Revenue and Taxation Code, the time limit of which became effective nearly 10 months before this action was filed.

The judgment appealed from is affirmed.

Griffin, J., and Mussell, J., concurred.

· A petition for a rehearing was denied November 22, 1949, and appellant's petition for a hearing by the Supreme Court was denied December 29, 1949.