[L. A. No. 21239. In Bank. May 15, 1951.]

LOWRY B. McCASLIN, Appellant, v. STUART HAMBLEN et al., Respondents.

[L. A. No. 21240. In Bank. May 15, 1951.]

STERLING M. PAILING, Appellant, v. STUART HAMBLEN et al., Respondents.

Robert E. Rosskopf, John F. Bender and Gizella M. Allen for Appellants.

Dailey S. Stafford, T. Guy Cornyn, Burke, Marshall & Burke and Daniel G. Marshall for Respondents.

SHENK, J.—These actions were brought to quiet the plaintiffs' title to contiguous unimproved parcels each containing five acres of land in the city of Arcadia. The defendants Hamblen claimed both parcels pursuant to tax deeds from the city. The plaintiffs appealed from adverse judgments determining the validity of the tax deed titles. The actions were consolidated for trial and a single record is presented on appeal.

The causes were submitted to the trial court on a stipulation of facts. The city of Arcadia is a city of the sixth class and levies and collects its own taxes. In 1931 Anita M. Baldwin was the owner of contiguous Lots 14 and 15 of Los Robles de Santa Anita tract, which were included within a fenced and unimproved parcel of 35 acres. The acreage at all times involved was used for grazing purposes at nominal rental or in consideration of weed abatement.

The second half of the 1931 city taxes on each lot became delinquent and on June 30, 1932, the lots were marked sold to the city of Arcadia for nonpayment of the 1931 taxes. On December 20, 1935, Anita M. Baldwin conveyed Lot 15 to plaintiff Pailing, one of her nephews, by gift deed recorded April 13, 1945. On March 24, 1936, she conveyed Lot 14 to plaintiff McCaslin, another nephew, by gift deed recorded April 16, 1936. Tax deeds to the city were executed September 28, 1942. Efforts by the plaintiffs to redeem the property

between 1944 and 1947 were unsuccessful. The tax deeds to the defendants Hamblen were issued on June 16, 1947.

The actions were commenced June 26, 1947. A first trial resulted in judgments for the plaintiffs which were set aside on the defendants' motion for a new trial. Thereupon the defendants amended their answers to include the plea that the actions were barred because they were not commenced within one year after September 15, 1945, the effective date of section 175 of the Revenue and Taxation Code.

The conclusion of the court was that the tax deeds to the defendants were valid and that the plaintiffs had no right, title or interest in or to the property.

Questions concerning the sufficiency of the evidence to support the findings of validity become material only if section 175 of the Revenue and Taxation Code does not bar the actions. That section, effective September 15, 1945, provides that all delinquency tax deeds theretofore or thereafter issued to the state or to any taxing agency, including taxing agencies which have their own system for the levying and collection of taxes, shall be conclusively presumed to be valid unless held to be invalid in an appropriate court proceeding to determine the validity of the deed commenced within one year after the execution of the deed or within one year after the effective date of the section, whichever is later.

It may not be questioned that the section is a statute of limitations as distinguished from a curative act, and that the time factor is reasonable so as to bar these actions commenced almost two years after the effective date (See *Rand* v. *Bossen*, 27 Cal.2d 61, 65 [162 P.2d 457]; *Tannhauser* v. *Adams*, 31 Cal.2d 169, 171 et seq. [187 P.2d 716, 5 A.L.R.2d 1015]; *Davault* v. *Essig*, 80 Cal.App.2d 970, 972-973 [183 P.2d 39] and cases cited; *Rombotis* v. *Fink*, 89 Cal.App.2d 378, 386 [201 P.2d 588] and cases cited), unless it may be said that the plaintiffs were owners in possession as against whom the statute would not apply.

The plaintiffs rely on *Tannhauser* v. *Adams, supra.* In that case the problem of whether a similar statute (Rev. & Tax. Code, § 3521, operative June 1, 1941) applied to owners in possession was discussed but not determined. It was held that a right to raise a question of jurisdictional or other defects in delinquent tax proceedings may be cut off or terminated by a statute of limitations which affords a reasonable time within which to pursue the remedy; and that the statute applied there in any event since the defendant, the tax

title purchaser, had been in continuous uninterrupted possession from January 1, 1941; that the plaintiff had knowledge of the defendant's possession, was himself out of possession, and did not bring the action until more than three and one half years after the operative date of the statute.

As the discussion in the Tannhauser case indicates, the rule of inapplicability of statutory limitation has been said to apply as to owners who because of their possession could not be assumed to have actual knowledge of claims of adverse interest by persons not in possession. As the discussion also shows, that rule, borrowed from cases involving mortgages, trusts and the like, has been applied in some jurisdictions where the original owner of land sold to the state remains in undisturbed possession. In the Tannhauser case the plaintiff, the original tax-delinquent owner, was out of possession and was held to be at no greater disadvantage than other litigants who by reason of their lack of promptness in asserting their claims find themselves either without remedy or without right.

Assuming that the rule might have application in a case where the plaintiff is the original tax-delinquent owner in undisturbed possession, it would seem right to conclude that a generalization applicable merely to ''owners in possession'' is too broad. The plaintiffs are not the original tax-delinquent owners. They took conveyances of the parcels from the tax-delinquent owner after sale to the city and subject to the city's rights. They must therefore be deemed to have had knowledge of the city's rights and that successors to those rights might acquire title adverse to them. In fact their efforts to redeem beginning in 1944 showed actual knowledge of hostile claims, but action to test the validity of the tax proceedings was not commenced until 15 years after sale to the city, five years after the tax deed to the city, and nearly a year after the statutory bar applied. Furthermore it has been held that, whatever might be the rights of an owner in possession, the rule has no application in cases of unimproved and unoccupied land where the only possession is that which is presumed from the fact of conveyance. (*Luberco, Ltd.* v. *Kipp,* 94 Cal.App.2d 409 [210 P.2d 901]; *Jones* v. *Bartlett,* 94 Cal.App.2d 418 [210 P.2d 903]; *Union Title Ins. & Trust Co.* v. *Thorp,* 94 Cal.App.2d 421 [210 P.2d 905]; *Wilson* v. *Kipp,* 94 Cal.App.2d 426 [210 P.2d 908]; *Central Valley Equip. Co.* v. *State,* 98 Cal.App.2d 778 [220 P.2d 811].) Lots 14 and 15 were unimproved and there was no

actual occupancy by the plaintiffs. The stipulated conclusion that the plaintiffs were in the sole and exclusive "possession" of the land has no efficacy to bring them within the rule which does not apply under the stipulated probative facts. This is so also because of the parties' express reservation that the stipulated legal effect of agreed facts was not to be considered binding. The conclusion follows that the actions were barred by the provisions of section 175 of the Revenue and Taxation Code.

The plaintiffs contend that the foregoing conclusion is not controlling because their efforts to redeem were timely and proper. The city was made a party defendant and a cause of action was included for declaratory relief. The stipulated facts indicate that beginning in 1944 the plaintiffs made offers and tenders of sufficient amounts to redeem the property and now make similar offers, which it may be assumed would entitle them to redeem and place upon the city the obligation to reimburse the defendants unless the period of redemption was terminated as contended by the city.

In 1932 city ordinance 33 provided that the owner or any person having an interest in tax delinquent property sold to the city might redeem within five years from the date of sale and thereafter at any time prior to sale by the city. Commencing in 1937 various ordinances were adopted to encourage redemption during the depression by permitting payments of required amounts in installments and thereby in effect to extend the mandatory period of redemption, all of which were repealed in 1941.

In 1941 the city by ordinance 460 adopted a new taxing procedure. The ordinance includes provisions for annual publication on or before June 8th of the delinquent list and for notice of sale at public auction of tax-delinquent property sold to the city in the fifth preceding calendar year or prior thereto. Provision is also made for the mailing of notice to the assessee to include a statement of when redemption may be made. In accordance therewith and on June 30, 1942, a public auction for sale of tax-sold property including Lots 14 and 15 was held but no bids were received for the lots. On September 28, 1942, the lots were deeded to the city and the deeds recorded on November 24, 1942. Section 999 of the ordinance provides that the execution of the last mentioned deeds terminates the right of redemption.

As noted the foregoing provisions apply to property sold but not deeded to the city and as to which the five year

mandatory period of redemption had expired. Section 1000 makes special provision for termination of the right of redemption on notice as to property which was deeded to the city before the effective date of the 1941 ordinance, if the property is not redeemed pursuant to such notice.

The plaintiffs argue that the lots should have been tax-deeded to the city in 1937 and therefore the provisions of section 1000 requiring special notice to terminate the right of redemption should apply. The defendants counter with the argument that the various ordinances enacted prior to 1941 in effect extended the mandatory period of redemption and operated to delay compliance with the provision requiring a deed to the city at the close of the five year period following sale to the city. The city relies on section 999 of the ordinance which provides for termination of the right of redemption upon the execution of the deed to the city when there has been no sale at the public auction held pursuant to notice.

Ordinance 460 deals with two classes of tax-sold property, namely property which remained undeeded for five years or more after sale to the city and property which was deeded to and unsold by the city prior to the effective date of the ordinance. It would seem that it was intended to include in the first class all property which remained undeeded to the city for any reason. The ordinance should be held operative in accordance with its terms unless the plaintiffs are entitled to prevail in their contention that the law in force at the time of sale to the city controlled the period of redemption, in which event the period did not terminate until sale by the city.

It is now settled, however, that the law in effect at the time of the sale to the state does not govern the redemption of the property when the Legislature has provided otherwise and that the Legislature may make reasonable retroactive changes in the method of redemption. (*Mercury Herald Co.* v. *Moore*, 22 Cal.2d 269, 274 [138 P.2d 673, 147 A.L.R. 1111].) The Mercury Herald case involved a similar problem arising from the 1941 amendments in the state tax law which changed the procedure for terminating the period of redemption following the close of the five year period. As to property not tax-deeded at a determined date the deed to the state, following publication and sending of notice for sale of the land at public auction, terminated the right of redemption. As to previously tax-deeded property special provisions applied governing notice of termination of the right. This court distinguished

between the absolute right to redeem within the five year period, and the continuing right during the period of grace which could be terminated at any time on sale by the state. It was held that there was no contract right or vested interest in the continuance of the right after the five year period but that the continuing redemption privilege could be revoked by the state upon compliance with due process; that due process was afforded by the provision for notice prior to sale at public auction or tax deed to the state if no sale had been made, and that such notice provided reasonable opportunity for redemption.

▮ The changes in the state and the city tax procedures were fundamentally similar. Unlike the state procedure the city ordinance enacted in May, 1941, did not contain specific provision for one year's delay in its operation, but the practical result was the same for the reason that the first notice thereunder could not be given until June of 1942. Regardless of minor differences in time provisions and other factors, the rule established by a majority of this court in *Mercury Herald* v. *Moore* governs a like result in the present case. The controlling factor here is the provision for published and mailed notice of the contemplated public sale which together with the provisions of the ordinance concerning termination of the right of redemption put the plaintiffs on notice that the right of redemption would terminate by the execution of the tax deeds to the city. There is no merit in the contention that, if the law as determined in *Mercury Herald* v. *Moore* controls, the provision for notice of the termination of the right of redemption was unreasonable. (See, also, *Assets Reconstruction Corp.* v. *Munson,* 81 Cal.App.2d 363 [184 P.2d 11].)

▮ It is contended that the period of redemption was nevertheless continued as to plaintiff McCaslin by reason of his military service. McCaslin was in the naval forces from June 22, 1942, until April 25, 1945. The applicable statute was the Soldiers' and Sailors' Civil Relief Act of October 17, 1940 (54 Stat. 1178, ch. 888). The act applied to real property owned and occupied for dwelling, agricultural or business purposes by a person in military service, and required the filing of an affidavit showing the existence of the factual conditions in order to claim the benefits. It is not necessary to consider the question whether here the agricultural lands were ''occupied'' by the owner for agricultural purposes by the rental thereof for grazing cattle. The determinative

factor is that no affidavit to claim the benefits was filed pursuant to the act. A later amendment (October 6, 1942, 56 Stats. 769, 770, ch. 581) eliminated the provision requiring the filing of an affidavit. It is of no assistance here since prior to its operation and on September 28, 1942, the period of redemption was terminated by the deed to the city.

The judgment is affirmed.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.