[Civ. No. 999.   First Appellate District.—June 21, 1912.]

## L. L. BOYER, Appellant, v. FRANK A. GELHAUS, WILHELMINA GELHAUS, His Wife, and HIBERNIA SAVINGS AND LOAN SOCIETY, a Corporation, Respondents.

Taxes—Sale to State—Redemption—Void Second Sale—Action to Quiet Title—Support of Findings.—In an action by one claiming under a tax title from the state to quiet his title against the former owners in possession and their mortgagee, where the evidence and findings show that the property was first sold to the state for the second installment of taxes for the fiscal year 1897–98, and afterward in 1899, for taxes for the fiscal year 1898–99, and that the property was redeemed after the first sale, by the mortgagee, by payment of the amount required therefor, on December 31, 1898, as certified by the auditor, including the taxes for the fiscal year 1898–99, which were then a lien upon the property, the court properly found that at the time of the second sale there was no delinquency upon the property, and that the tax title based thereon is void.

Id.—Fact of Delinquency at Time of Sale Essential—Effect of Recital in Tax Deed—Prima Facie Evidence—Counter-evidence —Redemption Certificate.—Unless there was in fact a delinquency, a sale by the tax collector is unauthorized and void, and the tax deed given in pursuance of such sale conveys no title. The only evidence to prove that the taxes for the year 1898 were not paid is the deed of the tax collector, which recited such fact, which is by the statute intended as *prima facie* evidence of the fact recited. This is subject to counter-evidence, which is found in the recitals in the redemption certificate of 1898, which at that time was required by the Political Code to contain a statement of all taxes that were a lien upon the real estate up to the time of redemption.

Id.—Certificate of Auditor for Redemption Made Prima Facie Evidence—Conflict of Statutory Evidence—Finding Supported.— There being a conflict in the statutory *prima facie* evidence, the court was authorized to find in favor of the certificate of redemption, as in case of any other conflicting evidence; and in accordance with the settled rule that where there is a conflict in the evidence, this court will not interfere with the findings of the trial court, the findings in this case must stand.

Id.—Plaintiff Without Title—Possession by Former Owners, Defendants, Sufficient Proof of Title.—It appearing that the plaintiff is without title, it follows that in his action to quiet title against

the former owners in possession, their possession is sufficient proof
of title as against the plaintiff who is out of possession with no
title.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco. Thomas F. Graham,
Judge.

The facts are stated in the opinion of the court.

James H. Boyer, and H. M. Anthony, for Appellant.

Stoney, Rouleau & Stoney, Leonard Stone, and Orville
Platt, Jr., for Frank A. Gelhaus and Wilhelmina Gelhaus, his
wife, Respondents.

Frank S. Brittain, also for Frank A. Gelhaus, Respondent.

Tobin & Tobin, and Frank S. Brittain, for Hibernia Savings
and Loan Society, Respondent.

Alexander McCulloch, for Joseph F. Boeddeker, Respond-
ent.

HALL, J.—This is an action to quiet title to certain real
property, situate in the city and county of San Francisco,
brought by appellant, who bases her title upon a certificate of
sale to the state for delinquent taxes and a tax deed executed
on behalf of the state to appellant's predecessor in interest,
F. J. Ghiselli.

The respondents, Gelhaus, filed an answer denying the alle-
gations of ownership by plaintiff and a cross-complaint, in
which, among other things, they set up that they were in pos-
session of the real property claimed by plaintiff, and were the
owners thereof, and prayed for a decree affirmatively quieting
their title as against appellant.

The court found that appellant was not the owner of the
property in suit, and that respondents Gelhaus were, and en-
tered a judgment accordingly quieting the title of respondents
Gelhaus as against the claim of plaintiff.

The appeal by plaintiff is from this judgment.

The property in question was sold to the state in 1898 for the second installment of unpaid and delinquent taxes levied against the property in 1897.

Subsequently, on December 31, 1898, the property was redeemed from such sale, by the Hibernia Savings and Loan Society, a mortgagee thereof, by the payment to the county treasurer of the amount required for redemption, as certified by the county auditor and the words "Redeemed December 31st, 1898," were stamped on the assessment-roll for the year 1898.

Subsequently, on the first day of July, 1899, the tax collector sold the property to the state as for the nonpayment of the second installment of taxes for the year 1898, and subsequently, on the fifth day of July, 1904, issued to the state a deed therefor. This deed was introduced in evidence by plaintiff, and is in the usual form. Appellant deraigns her title through this deed.

The defendants, Gelhaus, at the beginning of the action and for some time prior thereto were in possession of the property, claiming under a deed from the administrator of the estate of John McDonald, dated April 3, 1904.

The defendants introduced in evidence a duly certified copy of the recorded certificate of redemption given by the county auditor in pursuance of section 3817 of the Political Code. This certificate contained a statement of the amount of delinquent taxes for the year 1897 for which the property was first sold to the state and the interest and the penalty thereon, and gave the total amount necessary to redeem as $9.86. The statement of the auditor contained no statement of any other taxes that were a lien upon the property at the time said taxes became delinquent, nor of any subsequent tax.

As before stated, the court found that plaintiff was not the owner of the property, and also specially found, among other things, that at the time of the redemption of the property on December 31, 1898, all taxes levied or assessed upon said land for each year since the sale to the state, made in 1898, including the taxes for the fiscal year 1898–99, were paid, and that there was no delinquency of taxes on said property for the second installment of taxes thereon for the fiscal year 1898–99.

If these facts find support in the evidence, the judgment should be affirmed, for appellant's title is based upon the sale made as for the delinquency of the second installment of taxes for the year 1898; that is to say, for the fiscal year 1898–99.

Unless there was in fact a delinquency, a sale by the tax collector is unauthorized and void and the tax deed given in pursuance of such sale conveys no title. (*Randall* v. *Dailey,* 66 Wis. 285, [28 N. W. 352].)

The only evidence introduced by appellant to prove that any taxes for the year 1898 were unpaid was the deed of the tax collector to the state, which recited such fact.

Section 3785 of the Political Code, in terms, makes such deed "primary" evidence that "the taxes were not paid." The word "primary" as used in the statute manifestly means *prima facie* (see *De Frieze* v. *Quint,* 94 Cal. 653–659, [28 Am. St. Rep. 151, 30 Pac. 1]), and of course such evidence is subject to be controverted. If there is in the record any evidence in contradiction of the presumption of nonpayment of the tax for the year 1898 arising from the tax collector's deed, the finding of the court that such taxes were paid and that there was no delinquency of taxes on said property for the year 1898 is supported, and the judgment of the court cannot be reversed for want of evidence to support the findings.

We think this evidence is found in the certificate of redemption given by the auditor upon which the redemption was made on December 31, 1898, from the first sale for unpaid taxes. This statement calls for an examination of the law as to what is necessary to effect a redemption from a sale to the state and the duty of the auditor in relation thereto. After property is purchased by the state for unpaid taxes it must "be assessed for each subsequent year for taxes until a deed is made to the state therefor, in the same manner as if it had not been so purchased." (Pol. Code, sec. 3813.)

Section 3815 of the Political Code provides that no redemption shall be permitted of property sold to the state for delinquent taxes, without payment of all subsequent assessments, costs, fees, penalties and interest.

By "subsequent assessments," as used in this section, we think is meant all taxes levied against the property subsequent to the tax for which the sale was made.

That such is its meaning is made quite clear by the language of section 3816 of the Political Code, which provides for the distribution between the state and county of "the original and subsequent taxes and percentages, penalty and the interest paid on redemption."

Section 3817 of the Political Code as it stood prior to 1905 gave the right to redeem at any time prior to a sale by the state "by paying to the county treasurer of the county wherein the real estate may be situated, the amount of taxes due thereon at the time of said sale, with interest thereon at the rate of seven per cent per annum; and also all taxes that were a lien upon said real estate at the time said taxes became delinquent; and also for each year since the sale for which taxes on said land have not been paid, an amount equal to the percentage of taxes for the year upon the value of the real estate as assessed for that year."

From these various sections it is perfectly clear that, under the law, no redemption from a sale to the state for unpaid taxes could be effective without payment, not only of the taxes for which the sale was made, but also all subsequent taxes levied against the property up to the time of redemption. In other words, any taxes that were a lien upon the property at the time the taxes became delinquent, for which the sale was made, as well as all subsequent taxes, must be paid to effect a redemption from the sale to the state.

In the case at bar the taxes for the alleged nonpayment of which the sale was made in 1899, under which alone appellant claims title, became a lien upon the property upon the first day of March, 1898, and the amount thereof had been fixed and the assessment and levy completed before the redemption occurred from the first sale. By the clear terms of the statute any tax for the year 1898 should have been paid to effect a redemption on the thirty-first day of December, 1898, if it had not previously been paid.

In order to enable a redemptioner to comply with the requirements of the redemption law, section 3817 of the Political Code, as it stood when the redemption in this case was made and as it now stands, further provides that "The county auditor shall, on the application of the person desiring to redeem, make an estimate of the amount to be paid, and shall give him triplicate certificates of the amount, specifying the several

amounts thereof, which certificates shall be delivered to the county treasurer, together with the money," etc.

The giving of this certificate is an official duty of the auditor. It authorizes the county treasurer to accept redemption according to the face thereof (sec. 3817, Pol. Code) and is *prima facie* evidence of the facts stated therein. (Code Civ. Proc., secs. 1926, 1963, subd. 15.)

As before stated, the certificate given in this case contained a statement of the amount of the original tax for which the property was sold to the state and gave the total amount necessary to be paid to effect a redemption as the sum of $9.86, which was made up of the original tax, penalties and interest. The certificate further stated that the statement contained a full and correct statement of all unpaid taxes and penalties thereon up to the day of redemption. If the statement of the certificate be taken as true, it necessarily followed that all the taxes subsequent to the tax for which the first sale to the state was made had been paid before such redemption. In other words, this certificate was *prima facie* evidence that the tax of 1898, for the supposed nonpayment of which the sale under which appellant's claim was made, was not unpaid and never became delinquent.

The assessment-rolls for the year 1898, it was conceded, had been destroyed in the conflagration of April, 1906. The deed to the state under which appellant claims, and which shows a sale to the state for a sum less than $10, is *prima facie* evidence that the tax of 1898 was unpaid.

The certificate of the auditor is *prima facie* evidence that it had been paid. The court found in accordance with the evidence furnished by this certificate, and, in accordance with the well-established rule that where there is a conflict in the evidence this court will not interfere with the findings of the trial court, the findings in this case must stand.

There being no unpaid taxes for the year 1898, the sale to the state under which appellant claims was void and gave no title.

The appellant, having no title, cannot prevail against one in actual possession. Such possession is sufficient proof of title as against one out of possession and who establishes no title in himself. (Civ. Code, sec. 1006; *McGovern* v. *Mowry,* 91 Cal. 383, [27 Pac. 746]; *Stephenson* v. *Deuel,* 125 Cal. 656-663,

[58 Pac. 258] ; *White* v. *McGilliard,* 140 Cal. 654, [74 Pac. 298].)

Respondents Gelhaus proved their possession without dispute.

Appellant also complains of some rulings of the court in admitting evidence. We have examined these rulings. Such of them as are erroneous could not have affected the result and will not justify a reversal.

The judgment appealed from is affirmed.

Lennon, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 20, 1912.