[Civ. No. 18950. Second Dist., Div. Two. Oct. 20, 1952.]

HUGH X. SHEETER et al., Appellants, v. JOHN A. LIFUR et al., Defendants; SOUTHERN PACIFIC RAILROAD COMPANY (a Corporation), Respondent.

A. G. Van Deventer and Robert G. Bereman for Appellants.

C. W. Cornell, E. D. Yeomans and R. P. Reddingius for Respondent.

FOX, J.—Plaintiffs, who are husband and wife, brought a suit against defendants John and Gregory Lifur, Frances Olhasso and the Southern Pacific Railroad Company to quiet title to a designated parcel of property, praying also that defendant Southern Pacific Railroad Company be ordered to vacate the said premises, over a portion of which its tracks were laid and the rest used for purposes of maintaining its right of way. Defaults were entered as to all defendants other than the Southern Pacific Railroad Company, which filed an answer denying all of the material allegations of the complaint and interposing several affirmative defenses. Simultaneously, the Southern Pacific Railroad Company (hereinafter denominated defendant) filed a cross-complaint praying that title to the property in issue be quieted in it and that plaintiffs be enjoined from asserting any claims adverse to it in the said land. Plaintiffs take this appeal from a judg-

ment quieting title in defendant on its cross-complaint and denying the relief prayed for in plaintiffs' complaint.

The real property in dispute consists of a curving wedge of land approximately 40 to 44 feet wide and 471 feet long, allegedly located between the southerly line of operative property owned by defendant and the northerly line of a strip of property known as Lot B of the Lifur tract. Topographically examined, the property in issue consists in part of a level area along which is laid trackage used by defendant, the rest being a bluff about 35 feet high, enclosed by a fence along its southerly side where it is contiguous with Lot B of the Lifur tract. The record indicates that this fence was erected in 1915 by defendant and has been continuously maintained by it.

Plaintiffs' claim to this property is derived from a tax deed, based upon the failure of Martin Lifur and Bernard J. Olhasso to pay taxes assessed to them in 1930. This nonpayment culminated in a tax sale to the state in 1931, a deed to the state in 1936, and a tax deed to plaintiffs executed by the tax collector of Los Angeles County on August 2, 1948. Defendant contends that this strip of land has been its property since its original line was built in 1874 under the authority of a Congressional Act of March 3, 1871, granting to defendant a right of way 200 feet wide (100 feet on each side of the center line of the railroad as originally constructed) where such railroad right of way passed through the public domain.

The record indicates that pursuant to this congressional enactment, defendant filed a map of its proposed route with the Land Office in Washington and proceeded to construct its line within the boundaries of the purported federal grant, although no evidence appears in the record to establish that the 200-foot right of way traversed by the line was actually situated on land in the public domain. From defendant's Exhibit B it appears that a deed was obtained from one Catalina Batz in 1877, conveying to defendant a strip of property 100 feet wide (50 feet on either side of the track which was already laid pursuant to the claimed federal grant, and within its purported boundary lines). The Batz deed itself was not produced in evidence. In 1895, in order to smooth out the curving track, defendant relocated its tracks approximately 50 feet to the south, leaving them still within the area claimed under the land grant and at about the line shown on Exhibit B as the southern extremity of the grant from Catalina Batz. In 1905 defendant obtained a deed from

one Martin Lifur, conveying to it 2.798 acres of land. So far as it is here pertinent, the exhibit discloses that this conveyance, starting at approximately the point where defendant's original track was located, deeded to defendant a parcel of land extending 150 feet in a northerly direction, thus overlapping by about 50 feet in width the conveyance presumably made by Catalina Batz. This deed also included a strip about 50 feet wide up to the northerly rim of the claimed congressional grant and continued to a point 50 feet beyond, contiguous with the southeasterly line of an area identified as Lot C, Lifur tract. By this northerly addition to the property claimed under the congressional grant, defendant's right of way was increased to a width of 250 feet, with the property here involved located at the southern side, adjacent to Lot B of the Lifur tract.

In 1906 Martin Lifur, apparently the successor to the Batz interests in the area under discussion, filed with the county recorder a subdivision map showing the location of his property. This map discloses that a 250-foot wide strip of land, located between Lots B and C of the Lifur tract, and including the section of land here claimed by plaintiffs, is expressly designated as a part of defendant's right of way and disclaimed as a part of the Lifur properties which surrounded it. In 1915 defendant built a fence along the bluff contiguous to Lot B, enclosing the area now claimed by plaintiffs, and has ever since maintained the fence on this claimed boundary line.

On November 8, 1910, an amendment to the state Constitution, article XIII, section 14 (Stats. 1911, p. xliv), was adopted providing for a new method of taxation by the state upon the operative property of certain categories of corporations, including railroads, based upon percentages of gross receipts, these taxes being "entirely and exclusively for State purposes." Under section 14(a) it is stated that "such taxes shall be in lieu of all other taxes and licenses, state, county, and municipal, upon the property above enumerated of such companies except as otherwise in this section provided. . . ." Legislation to implement the constitutional provision was enacted in 1911, and statutes relating to this method of taxation incorporated in the Political Code by Statutes of 1917, p. 337 (Pol. Code, §§ 3664 to 3671d). Article XIII, section 14, was further amended June 27, 1933, to provide for local ad valorem taxation of property belonging to railroad corporations, effective January 1, 1935.

Evidence was introduced to establish that of the 250-foot wide right of way claimed by defendant, the strip 165 feet wide starting from the northern line of Lot B, Lifur tract, was classified as operative property and the remaining 85 feet, extending to the line of contact with Lot C, Lifur tract, was described as nonoperative property. According to a certified statement from Dixwell L. Pierce, secretary of the State Board of Equalization and custodian of the records of that board, the records of the board for the years 1929 and 1930 showed that a description of the property owned by defendant was filed by defendant. The certificate further states that pursuant to the requirements of Political Code, section 3665c, the State Board of Equalization classified and assessed the property therein described as defendant's operative property for 1929 and 1930. It further states that the assessment was on a strip of land used as a right of way not exceeding 10 rods (165 feet) and that in conformity with said assessment defendant paid the gross receipts taxes for 1929 and 1930. Mr. Pierce stated, however, that the maps filed with the State Board of Equalization showing the property on which taxes were paid to the state prior to 1935 had been destroyed. Other testimony, both oral and documentary, was adduced to show the division of the defendant's 250-foot wide property into 85 feet nonoperative property and the 165-foot operative property which was taxed under the gross receipts tax in the year 1930, and which was assessed for flood control purposes in 1930. Evidence was received that the land here in dispute was a part of this operative property.

To cover the years subsequent to January 1, 1935, when the taxation system was changed to an ad valorem basis paid to local tax authorities pursuant to assessments made by the State Board of Equalization, defendant placed in evidence two maps which it had filed with the State Board of Equalization showing the railroad property on which assessments were made, and receipts showing taxes had been paid, for the period covering July 1, 1935, to June 30, 1950. These maps show the property in issue to be within defendant's operative property and on one of them defendant's fence enclosing this property is shown on the southerly perimeter of defendant's right of way, contiguous with the northerly part of Lot B, Lifur Tract, which substantially corresponds with the southerly boundary of the disputed property.

Plaintiff introduced into evidence two pages from the County Assessor's official map book, one of which was in use

for assessment of taxes prior to 1926, and the other, a re-survey of the area, including the property here in dispute, in use from 1926 to 1935. These surveys purport to show that the property here in dispute is distinct from the property included in the defendant's right of way, and is in effect a parcel belonging to Lifur who is the assessee along with Olhasso. Another witness testified that defendant's receipted tax bill for 1930 covering the property later sold for de-linquent taxes, relates only to a special assessment for flood control.

On this state of the record the court found, in part, that defendant "entered into actual possession of all the land and premises described in the complaint . . . in the year 1895, claiming it in its own right, and . . . has ever since . . . occupied said land as a part of its right of way for purposes of maintenance and operation of its . . . railroad, and that all said property has been used continuously since said date and is necessary for said railroad right of way, and that said property has been enclosed by a substantial fence continuously since prior to the year 1915, which fence was erected and maintained by said defendant." A finding was also made that neither plaintiffs nor any predecessor in interest has been in possession since 1895, and that defendant first entered upon the premises "under claim of right and not as a tres-passer against the rights of . . . plaintiffs, or any of those under or through whom they claim."

Plaintiffs attack the court's determination that they do not have valid title to the property involved here and its judgment in defendant's favor upon several grounds, the first being that the findings are unsupported by the evidence. This argument is untenable when considered in the light of the rule that a reviewing court will uphold findings based on substantial evidence, resolving conflicts in the evidence in favor of the prevailing party (*Van Amersfoort* v. *Young,* 105 Cal.App.2d 22, 25 [232 P.2d 569]) and drawing all reasonable inferences in support of the findings. (*Wilbur* v. *Wilbur,* 197 Cal. 1, 7 [239 P. 332].) ██ In a suit to quiet title plain-tiff may recover only upon the strength of his own title, and not upon the weakness of defendant's title. (*Helvey* v. *Sax,* 38 Cal.2d 21 [237 P.2d 269] ; *Tanner* v. *Title Ins. & Trust Co.,* 20 Cal.2d 814, 825 [129 P.2d 383].) A fundamental question presented to the trial court is whether the property to which plaintiffs' tax deed relates existed as a separate parcel outside defendant's right of way, as plaintiffs claim,

and was assessable in 1930 to Lifur and Olhasso. The description which was used by the Los Angeles county assessor which is contained in the tax deed to plaintiffs is as follows: "Lot com at most N cor Lot B Lifur property th N 40.24 ft to SE line SP RR R/W the SW on sd R/W to N line Sec 20 T1S R12W th E 44.36 ft to most W cor sd Lot B th NE on NW line thereof to beg. Part of Sec 17 T1S R12W." This description pertains to a parcel of land about 40 feet wide, extending north of Lot B of the Lifur Tract, and it is plaintiffs' claim that this property is located between Lot B of the Lifur Tract and the 250-foot railroad right of way. Thus, plaintiffs are in effect claiming that the official map records on file with the County Recorder are erroneous since page 69 of Map Book 9 (defendant's Exhibit C) shows that the 250-foot right of way and Lot B are contiguous.

Plaintiffs rely upon a special survey made by H. E. Haenke and surveys made by the county surveyor's department to establish that the property they purchased at the tax sale is a separate parcel not within the defendant's right of way. These surveys are in conflict with defendant's Exhibit C which is also an official map, and with other evidence as to the extent and location of defendant's right of way. ▣ A question of fact was thus addressed to the court as to which of the official records, in the light of the explanatory testimony, was entitled to be accepted as correct and accurate. This conflict was resolved adverse to plaintiffs. An examination of the record shows substantial evidentiary support for this determination and it is therefore binding on appeal. The maps and exhibits introduced by defendant give complete data as to the dimensions of the property in issue, and especially on the critical issue of the length of the section or base line from the common point of reference (the intersection of sections 17, 18, 19, 20) to the southeast corner of Lot B. All maps relating to Lot B uniformly give the dimension of its southern line as 419.83 feet. But the uncertainty is as to where this 419.83 feet is to be measured from, since this is crucial in determining whether there is a gap that would be accounted for by the property in dispute. None of the plaintiffs' maps show the entire distance from the point where sections 17, 18, 19, 20 intersect to the southeast corner of Lot B. There is thus no sufficient basis for deciding whether plaintiffs' maps are correct. This is particularly important since comparison was required in the light of data contained in defendant's Exhibit C, the recorded

map of the Lifur property and the terms of the deed of conveyance by Martin Lifur to defendant in 1905. From this failure of plaintiffs' proof of the accuracy of the surveys relied upon by them the court could reasonably have drawn the inference that plaintiff bought a tract of land which had no independent existence, and was in fact included in defendant's operative property, upon which taxes were assessed and paid to the state in 1930 under Gross Receipts Tax Law.

Plaintiffs contend that the introduction of the tax deed established prima facie evidence of title in them (*Luberco, Ltd.* v. *Boswell,* 96 Cal.App.2d 946, 950 [217 P.2d 105]), and also made out a prima facie case of nonpayment of taxes (*Cooper* v. *Miller,* 113 Cal. 238 [45 P. 325]), thereby casting upon defendants the burden of proof as to payment of taxes.

██ Whether plaintiffs' prima facie case was satisfactorily rebutted was a question of fact for the trial court to determine (*Luberco, Ltd.* v. *Boswell, supra*), and the record contains substantial evidence that the land here in issue was included in defendant's operative property on which it paid a gross receipts tax in 1930. Under the constitutional provision, article XIII, section 14(a), such taxes were in lieu of all other taxes, making this property, in practical effect, exempt from additional assessments by the state or any of its subdivisions vested with taxing power. ██ "Unless there was in fact a delinquency, a sale by the tax collector is unauthorized and void and the tax deed given in pursuance of such sale conveys no title. (Citing case.)" (*Boyer* v. *Gelhaus,* 19 Cal.App. 320, 323 [125 P. 916].)

Plaintiffs argue that their tax deed is conclusive evidence of the regularity. of all proceedings from the levy of the assessment to the execution of the deed. This contention is based on section 3711 of the Revenue and Taxation Code, a curative statute (formerly Pol. Code, § 3836) which reads as follows: "Except as against actual fraud, the deed duly acknowledged or proved is conclusive ·evidence of the regularity of all proceedings from the assessment of the assessor to the execution of the deed, both inclusive." However, defendant does not question the regularity of the proceedings leading to plaintiffs' deed. It is defendant's position that the tax deed to plaintiffs, which was based on an unpaid duplicate assessment to Lifur and Olhasso on property which the county had no authority to tax and on which taxes to the state were paid by defendant, is void and ineffectual against

the defendant. ██ The rule is thus stated in 61 Corpus Juris, Taxation, section 1226, page 949. "Where there are two assessments of the same land to different persons for the same year, the payment of taxes by one under his assessment discharges the lien for taxes, and no collection under the other assessment can be made, because the state is entitled to only one payment." The same text also states the rule that "If there are two sufficient assessments of land and the taxes due thereon are paid under either, the land cannot be validly sold for taxes under the other." (61 C.J., Taxation, § 1522, p. 112.)

From the evidence before the court, the conclusion could justifiably be drawn that defendant had paid taxes upon its operative property to the state and that this property included the tracks and adjoining property up to the fence which plaintiffs claim they acquired under the tax deed. In *Churchill* v. *Kellstrom*, 58 Cal.App.2d 84 [136 P.2d 602], plaintiff brought an action to quiet title against defendant Southern Pacific and others, claiming adverse possession for 20 years and payment of taxes as against the defendant who was also claiming by adverse possession and payment of taxes. The court states at page 87, "There is also evidence that the lot was included as part of defendants' operative property for the purpose of taxation. . . . We do not feel it necessary to determine the correctness of any assessments or payments of taxes made herein, for there is ample evidence of payment by both parties. However, if the property were properly a part of the measure of defendants' gross receipts tax it was exempt from further taxation (citing cases) and plaintiff's payment of county or other taxes would be immaterial (citing cases)."

██ Thus it is apparent that the irregularity here attacked is not one of mere procedural routine which the Legislature could properly have cured by a validating act (*Bell* v. *Towns*, 95 Cal.App.2d 398 [213 P.2d 73]), and for which provision is made in section 3711 of the Revenue and Taxation Code as well as by the validating acts of 1943 and 1945 (Stats. 1943, ch. 458, p. 1993; Stats. 1945, ch. 1134, p. 2176; 3 Deering's Gen. Laws, Acts 8443, 8443a), but is jurisdictional in nature to which a curative act is inapplicable. (*Elbert, Ltd.* v. *Nolan*, 87 Cal.App.2d 24, 30 [196 P.2d 88].) ██ A statute purporting to make a tax deed conclusive evidence of title, and thereby preclude the owner from showing its invalidity because of a jurisdictional vice, would amount to an unconstitutional confiscation of property. (*Ramish* v. *Hartwell*, 126 Cal. 443, 448-449 [58 P. 920].) But no such meaning or interpretation

has been placed on section 3711 by the courts. (*DeFlon* v. *Van Lue*, 83 Cal.App.2d 288, 290 [188 P.2d 301].) ▊ Defendant was free, therefore, to proceed to show that the property in issue was part of its operative property, and that all duly assessed taxes were paid.

Plaintiffs assert that regardless of any constitutional restraint upon the Legislature to remedy defects in tax proceedings by validating acts, defendant's attempt to show the invalidity of the tax sale and the resultant tax deed is barred by the periods of limitation embodied in sections 175,[1] 3725[2] and 3521[3] of the Revenue and Taxation Code. ▊ All of these sections are statutes of limitation. (*People* v. *Chambers*, 37 Cal.2d 552, 558 [233 P.2d 557].) ▊ It appears to be the general rule that where the original owner of land which has been sold for taxes remains in the undisturbed possession of said property, then a statute of limitation does not run against him, nor prevent the maintenance of a suit by him to set aside the tax deed or remove the cloud on his title. (See *Tannhauser* v. *Adams*, 31 Cal.2d 169, 175 [187 P.2d 716, 5 A.L.R.2d 1015] ; *McCaslin* v. *Hamblen*, 37 Cal.2d 196, 199 [231 P.2d 1] ; *McKenna* v. *Ping*, 105 Cal.App.2d 752, 755 [234 P.2d 246] ; 34 Am.Jur., p. 29, § 20; p. 296, § 381; 61 C.J., p. 1418, § 2026; p. 1423, § 2031.) The rationale of this rule is that an owner, because of his possession, could not be assumed to have actual knowledge of claims of adverse interest by persons not in possession. (*McCaslin* v. *Hamblen, supra.*) ▊ However, it is not necessary for us to decide this question because of the established rule that if a statute of limitation is not pleaded it is waived, whether it be a general statute of limitation or one relating to a special proceeding. (16 Cal.Jur. 603-604.) Since

---

[1]Section 175, enacted in 1945, provides that ''All deeds heretofore and hereafter issued to the State of California . . . by reason of delinquency of property taxes . . . levied by any taxing agency . . . shall be conclusively presumed to be valid unless held to be invalid in an appropriate proceeding in a court of competent jurisdiction to determine the validity of said deed commenced within one year after the execution of said deed, or within one year after the effective date of this section, whichever be later.''

[2]Section 3725 provides: ''A proceeding based on an alleged invalidity or irregularity of any proceeding instituted under this chapter can only be commenced within one year after the date of execution of the tax collector's deed.''

[3]Section 3521 provides: ''A proceeding based on an alleged invalidity or irregularity of any deed to the State for taxes or for any proceeding leading up to the deed can only be commenced within one year after the date of record of the deed to the State in the county recorder's office, or within one year after June 1, 1941, whichever is later.''

plaintiffs failed to plead any of these limitation provisions in their answer to the cross-complaint, they are not in a position to now urge them. (*Hall* v. *Chamberlain,* 31 Cal.2d 673, 679-680 [192 P.2d 759]; *Merchants Finance Corp.* v. *Mahomed,* 82 Cal.App.2d 649, 653 [187 P.2d 39].)

Plaintiffs argue that the court committed prejudicial error in its rulings upon objections to the introduction of evidence relating to certain proceedings and events occurring prior to the issuance of the tax deeds and in admitting proof of various tax payments made by defendant. This evidence was correctly admitted to establish defendant's claim to the property in issue, to refute the presumption of nonpayment of taxes, and to establish the duplicate assessment and the consequent invalidity of the tax deed. There is no merit to plaintiff's contention that certain exhibits were received without proper foundation or authorization being established or that they were immaterial to the issues of the case, and plaintiffs' motion to strike them from the record was properly denied.

Plaintiffs' final argument attacks the court's finding that the entire property in dispute was within the defendant's right of way as being against the evidence. However, an examination of the testimony reveals abundant support for this finding. The record indicates that defendant entered upon the property in question under a claimed congressional grant, constructed a rail line in 1874, shifted its tracks in 1895, erected its fence in 1915, and has been in uninterrupted possession at all times. Under these circumstances, the court was justified in bringing into play the presumption "that a person is the owner of property from exercising acts of ownership over it, or from common reputation of his ownership." (Code Civ. Proc., § 1963[12].) Even though plaintiffs introduced controverting evidence, the presumption remained in the case for consideration and weighing by the trier of the facts. (*Estate of Kennedy,* 106 Cal.App.2d 621, 627 [235 P.2d 837].) Furthermore, the court had before it the subdivision map filed by Martin Lifur in 1906 indicating that the defendant had a 250-foot right of way between Lot B and Lot C of the Lifur tract, as well as evidence of the construction of a fence by defendant enclosing the area now in dispute. From this the court could have reasonably inferred that any uncertainty as to the boundary line between defendant's right of way and Lot B growing out of the congressional grant and earlier conveyances by Batz and Lifur was thus resolved by parol agreement of a practical location and by

long acquiescence therein. (*Mello* v. *Weaver,* 36 Cal.2d 456, 459-460 [224 P.2d 691].) Finally, there was evidence before the court that the land was a part of defendant's operative property which was used as a measure for the payment of the gross receipts tax for 1930, thus rendering it immune from local taxation. We cannot, therefore, say as a matter of law that the evidence is insufficient to support the findings.

Since the foregoing discussion disposes of the essential issues involved herein, it is unnecessary to consider other questions raised by counsel in their briefs.

Judgment affirmed.

McComb, Acting P. J., concurred.