UNITED STATES of America, Plaintiff,

v.

Joseph F. BLAYLOCK; Guy Head; Orleans Veneer and Lumber Co., a corporation; Hyrum S. Sims; Edward E. Head, doing business as Head Lumber Company and as Siskiyou Mills, a partnership; John H. Stevens; and Harold Leevers and Iris Leevers, a partnership, doing business as Willamette Builders Supply, Defendants.

Civ. No. 36569.

United States District Court
N. D. California, S. D.
March 4, 1958.

5. 1957, 149 F.Supp. 707.

Lloyd H. Burke, U. S. Atty., Bernard Petrie, Asst. U. S. Atty., San Francisco, Cal., for plaintiff.

Michael T. Hennessy, Yreka, Cal., for defendant Joseph F. Blaylock.

Huber & Goodwin, Eureka, Cal., for defendant Orleans Veneer & Lumber Co.

William L. Ferdon, San Francisco, Cal., for defendant Edward E. Head.

Samuel R. Friedman, Yreka, Cal., for defendant John H. Stevens.

ROCHE, Chief Judge.

The United States of America brings this action under 28 U.S.C. § 1345 (1952) against defendants Joseph Blaylock, Guy Head, and Orleans Veneer and Lumber Co., praying for: (1) a permanent injunction against Blaylock, restraining him from entry upon certain land in the Klamath National Forest and from logging the timber thereon; (2) a deed from Blaylock to plaintiff of this same land and judgment that the land belongs to plaintiff free of any liens; and (3) reformation of Homestead Patent No. 822,606 to contain a corrected legal description of the land patented under it.

The record discloses that, prior to 1921, John Patterson occupied certain land (hereafter called Parcel 1) in the Klamath National Forest, Siskiyou County, California, as a homestead under entry number 02655 and applied for a patent covering the land. On September 13, 1921, plaintiff issued to John Patterson Homestead Patent No. 822,606, which patent contained the following description intended by plaintiff to cover Parcel 1:

Northeast quarter of the northwest quarter, the east half of the east half of the northwest quarter of the northwest quarter, the north

half of the north half of the southeast quarter of the northwest quarter and the northeast quarter of the northeast quarter of the southwest quarter of the northwest quarter of Section thirty-four in Township thirteen north of Range six east of the Humboldt Meridian, California, containing sixty-two and fifty-hundredths acres.

The evidence shows that the description contained in Homestead Patent No. 822,-606, because of mistake, did not cover Parcel 1 but instead covered another parcel of land in the Klamath National Forest owned by plaintiff (hereafter called Parcel 2).

The record shows that, in June 1943, a deed was executed between the Tax Collector of Siskiyou County and the State of California purporting to transfer certain property to the State of California for non-payment of taxes. This deed contained the following description: "Homestead Entry #02655 in NW¼ Desig. Plat # 4 Sec 34 Twp 13 R, 6E HM Ditch and Water Right." In January 1946, as a result of a tax sale, Hyrum S. Sims took a deed from the State of California with the following description: "H. E. #02665 Por. of NW¼ (Ditch & Water Right) Section 34, Twp. 13 North, Range 6 East HM." The evidence shows that Sims intended to buy Parcel 1.

In 1952, Sims had Albert Parrott, Siskiyou County Surveyor, make a survey of Parcel 1. According to that survey, Parcel 1 lies in sections 27 and 28, instead of section 34, Township 13 North, Range 6 East, Humboldt Meridian. The record shows the true description of Parcel 1 to be:

From the quarter corner common to sections 20 and 29, Township 13 North, Range 6 East, Humboldt Meridian, South 66 degrees 09 Minutes east for 8,038.96 feet, thence east 1,650 feet, thence north 1,650 feet, thence west 1,650 feet and thence south 1,650 feet.

Upon learning of the mistaken description in his title, the record shows that Sims wrote to the Klamath Forest Supervisor on March 19, 1952 for advice about securing a proper legal description for Parcel 1. The Forest Supervisor, in a letter of July 23, 1952, recognized Sims' right to Parcel 1 where he was living, permitting him to cut timber on it and indicating that the Forest Supervisor would accept an amended patent description covering Parcel 1. Thereupon, Sims had Parcel 1 logged in 1953, 1955, and 1956. One of the men who logged in 1955 and 1956 was defendant Blaylock.

On July 9, 1956, the record shows, Sims conveyed his interest in Parcel 1 to Blaylock by quitclaim deed and also delivered to Blaylock a grant deed containing the description of Parcel 2. Plaintiff alleges that, when taking both deeds, Blaylock knew that any interest of Sims in Parcel 2 was subject to being divested by plaintiff.

The evidence shows that, in July 1956, Blaylock delivered to defendant Guy Head a deed of trust containing the description of Parcel 2 as security for Guy Head's co-signing a note with Blaylock. That deed of trust has not been recorded. The record further discloses that, on December 1, 1956, Blaylock delivered to defendant Orleans Veneer and Lumber Co. an instrument purporting to assign his interest in the grant deed covering Parcel 2. Plaintiff alleges that this instrument did not pass any legal interest in Parcel 2 to Orleans Veneer and Lumber Co. Plaintiff further alleges that, when receiving the instrument, Orleans Veneer and Lumber Co. knew or should have known that any interest of Blaylock in Parcel 2 was subject to being divested by plaintiff.

Since Blaylock claims to own Parcel 2 and has cut timber on it, plaintiff sought and received a preliminary injunction restraining Blaylock from cutting or removing timber on Parcel 2. It is this injunction which plaintiff seeks to have made permanent.

■ The record discloses that plaintiff has a right to reformation of the patent and subsequent documents of title. Blaylock's first defense is that his purchase of

Parcel 2 from Sims, in good faith, for value, and without notice, extinguished plaintiff's right of reformation. However, the evidence shows that Blaylock knew of Sims' arrangement with the Forest Service under which Sims could log Parcel 1 in spite of documents of title showing him to be the owner of Parcel 2. Sims had given Blaylock a copy of Parrott's survey map, which showed both the "location of Patterson patent and H. S. Sims as occupied previous to homestead application of 1921 and continuous to date" (Parcel 1) and the "location of Patterson patent as per records 62.5 acres" (Parcel 2). Sims had also told Blaylock that Blaylock would not have any right to timber on Parcel 2. Therefore, Blaylock was not a bona fide purchaser when he took a grant deed from Sims to Parcel 2.

■ Blaylock's second defense is that plaintiff's right of reformation had been extinguished before Blaylock bought from Sims. Blaylock contends that the transfer of Parcel 2 to the State of California in 1943 for unpaid taxes and Sims' purchase of Parcel 2 at a tax sale in 1946 were both bona fide purchases cutting off plaintiff's equity of reformation. The record discloses that the United States has always been in possession of Parcel 2. The United States had a right against Patterson to reform the patent to show that the United States was the real owner of Parcel 2. This right cannot be cut off by State taxing power. The State of California never had jurisdiction to tax Parcel 2. Defects in tax titles and tax deeds fall into two categories, procedural and jurisdictional. A state may enact statutes declaring that a tax deed is conclusive evidence of title so far as procedural defects are concerned, but such statutes cannot relieve jurisdictional defects inasmuch as that would constitute an unconstitutional confiscation of property. Miller v. McKenna, 1944, 23 Cal.2d 774, 147 P.2d 531; accord, Sheeter v. Lifur, 1952, 113 Cal.App.2d 729, 249 P.2d 336.

■■ Blaylock's third defense is that plaintiff should be denied its relief on the equitable ground of laches. The ordinary defense of laches is not available against the United States. The United States holds its lands in trust for the people. Officers or employees of the United States who have no authority to dispose of United States property cannot by their conduct cause the United States to lose its valuable rights in such property by their acquiescence or failure to act. United States v. State of California, 1946, 332 U.S. 19, 40, 67 S.Ct. 1658, 1669, 91 L.Ed. 1889, 1900.

■ Plaintiff's right of reformation cannot be extinguished by transfer of a title acquired by the State of California for unpaid taxes on land which was never within the State of California's taxing jurisdiction. See Miller v. McKenna, 1944, 23 Cal.2d 774, 147 P.2d 531. Accordingly, the court finds no merit in the defense of Orleans Veneer and Lumber Co. Orleans Veneer and Lumber Co. cannot acquire rights in Parcel 2 superior to those of plaintiff because the origin of Orleans Veneer and Lumber Co.'s claim is a tax deed defective for want of taxing jurisdiction. Cf. Gaspard v. Edwin M. LeBaron, Inc., 1951, 107 Cal. App.2d 356, 237 P.2d 278.

Plaintiff's prayer for:

(1) a permanent injunction against Blaylock, restraining him from entering upon and logging the timber on Parcel 2; and

(2) a deed from Blaylock to plaintiff of Parcel 2 and judgment that Parcel 2 belongs to plaintiff free of any liens; and

(3) reformation of Homestead Patent No. 822,606 to contain a corrected legal description of Parcel 1 is hereby granted.

Plaintiff's prayer for alternative relief against defendants Hyrum S. Sims, Edward E. Head, John H. Stevens, Harold Leevers, and Iris Leevers is hereby denied.

Plaintiff shall prepare findings of fact, and conclusions of law in accordance with this opinion.